# EXHIBIT 1



Medmarc Casualty Insurance Company
Noetic Specialty Insurance Company

Medmarc Insurance Group
Medical Technology-Life Sciences
Products and Completed Operations Liability Insurance

14280 Park Meadow Drive, Suite 300, Chantilly, VA 20151-2219          Phone: 703.652.1300 or 800.356.6886          Fax: 703.652.1389

## CLAIM AND SERIOUS ADVERSE EVENT REPORTING PROCEDURES

We are pleased your company is a Medmarc Insurance Group policyholder.  Medmarc takes great pride in practicing sound liability claims-handling procedures tailored to your needs.  To help you better understand when to report claims and serious adverse events to us, please review this brief summary.

## Claims and Serious Adverse Events

**Claims are written demands or requests that you pay or owe money damages or some other obligation.**  Claims may include a demand for replacement, a new product or for a specific performance of some activity.  Typically, claims will come to you when an individual, a lawyer or some third part contacts you about an alleged problem with one of your products.  Occasionally, a medical provider will advise of a potential claim.  Claims include lawsuits.

**Serious adverse event** is an undesirable experience associated with your product where the outcome to the patient is life threatening, death, required hospitalization (initial or prolonged), disability or permanent damage, a congenital anomaly or birth defect, required intervention to prevent permanent impairment or damage, or required medical intervention to prevent  one of the outcomes listed in this paragraph.

## What and When to Report

**Claims** need to be immediately reported to Medmarc as soon as reasonably possible.

**Serious Adverse Events** need to be reported to Medmarc prior to the end of the policy period.

Please report all claims and serious adverse events, in writing to:

Medmarc Insurance Group
Attn:  Claim Reporting
14280 Park Meadow Drive, Suite 300
Chantilly, Virginia  20151

Email:  claimsreporting@medmarc.com
Fax:  703.652.1389
Phone:  703.652.1300 / 800.356.6886

*This summary provides general claims and serious adverse events reporting instructions.  It does not extend or alter the insurance policy language.  In the event of any conflict between this summary and the insurance policy language, the insurance policy language will prevail.*

9.2016

# PROASSURANCE PRIVACY POLICY

ProAssurance Corporation and its affiliate companies (collectively, "ProAssurance" or "we") have adopted this Privacy Policy effective August 3, 2018.

ProAssurance recognizes the confidence you place in us when sharing your personal information, and we respect and will protect your privacy. We are committed to protecting the security and confidentiality of your nonpublic personal information by maintaining appropriate safeguards in our data systems to prevent unauthorized access to your information.

## TYPES OF INFORMATION WE COLLECT

ProAssurance obtains personal information about its customers (including individuals who submit applications for coverage) in the normal course of conducting its business. This information may include names, postal and electronic addresses, telephone numbers, Social Security numbers, taxpayer identification numbers and professional licensing numbers. This information may be obtained from applications and other forms submitted by you, or an agent or broker on your behalf, from licensing or regulatory entities, or from defending claims in which you are a party, or from peer review documents. Additionally, information about you may also be obtained from your activity on our website.

### **Cookies and Tracking Technologies**

Our website uses cookies and other tracking technologies to help us keep track of your visit(s), your activity on our website, and to verify your identity through our use of multifactor authentication to protect your security. We do not store any nonpublic personal information on the cookie, and the cookies are deleted after their use.

## HOW WE USE, SHARE AND PROTECT YOUR INFORMATION

We restrict access to your personal information to those employees or third parties who require the information to provide products or services you expect from a leader in the professional liability and worker's compensation insurance industry. We will not disclose personal information to any non-affiliated third parties without your prior authorization, except as necessary to conduct our business or as permitted or required by law. ProAssurance will not disclose your personal information for promotional purposes, and we will not sell, trade or rent your information to third parties. Information that we obtain about your activity on our website is used to improve your user experience or for servicing a request.

We follow generally accepted industry standards to protect the personal information you submit to us, both during transmission and once we receive it. No method of transmission over the internet is 100% secure. Therefore, we cannot guarantee its absolute security. If you have questions about security on our website, you can contact us.

## RETENTION OF DATA

We retain personal information when we have an ongoing legitimate business purpose or are legally required to do so. Our retention period depends upon the type of data involved. If we no longer have a legitimate business need to retain your data, we will either delete or anonymize it, or if that is not possible, we will isolate your data until deletion is possible.

## COMPLIANCE WITH THE GENERAL DATA PROTECTION REGULATION

ProAssurance is a U.S. based company. However, due to the global nature of our business, we are aware that under the European Union's General Data Protection Regulation (GDPR), individuals in the European Economic Area (EEA) have a number of rights in connection with their personal data. These rights only apply in certain circumstances and are subject to certain exception. The rights include the following:

1.  **Right to Withdraw Consent.**  You have the right to notify ProAssurance that you no longer want us to process or use your personal data. You can do that by contacting ProAssurance via email or the mailing address below.

2.  **Right to Data Portability.**  You have the right to obtain a copy of your Personal Data stored and processed by ProAssurance and direct ProAssurance to transfer your personal data to another controller via an electronically suitable format.

3.  **Right to Erasure/Right to be Forgotten.**  You have the right to request that any of your Personal Data being stored or processed by ProAssurance is deleted from our records. However, while we can delete your Personal Data from our current records, copies of your data may be stored in ProAssurance's inactive and archived records and will be deleted in accordance with our then-current document management policy. In some cases, your Personal Data may be continued to be stored in archived records of transactions of activities where ProAssurance is required by law to retain such records.

4.  **Right to Restriction of Processing.**  You may request that ProAssurance restrict the processing of your Personal Data. In such case, this may affect your ability to use or navigate our website.

If you have a question about exercising these rights or a question about our Privacy Policy, please contact us at

PrivacyPolicy@ProAssurance.com

100 Brookwood Place, Suite 300
Birmingham, AL 35209





## LIFE SCIENCES

### Noetic Specialty Insurance Company

---

## THIS IS A CLAIMS-MADE POLICY
### *PLEASE READ THE ENTIRE FORM CAREFULLY.*

---

## PRODUCTS/COMPLETED OPERATIONS LIABILITY
## DECLARATIONS

---

**FIRST NAMED INSURED AND ADDRESS**
B. Braun of America Inc.
See SCHEDULE OF NAMED INSURED
824 Twelfth Avenue
Bethlehem, PA 18018

**PRODUCER'S NAME AND ADDRESS**
The Graham Company
One Penn Square West
Philadelphia, PA 19102

**POLICY NUMBER:** N18PA380025          **PRIOR POLICY:** N17PA380023

**POLICY PERIOD:**  From **12/31/2018** to **12/31/2019** at 12:01 A.M. Standard Time at your address shown above.

**RETROACTIVE DATE:** <u>See Schedule of Retroactive Dates</u>  Coverage under this policy does not apply to **Bodily Injury** or **Property Damage** which occurs before the **Retroactive Date** as shown.

---

**IN RETURN FOR THE PAYMENT OF THE PREMIUM, AND SUBJECT TO ALL THE TERMS AND CONDITIONS OF THIS POLICY, WE AGREE WITH YOU TO PROVIDE THE INSURANCE AS STATED IN THIS POLICY.**

### 1. LIMITS OF INSURANCE

| | |
|---|---|
| POLICY PRODUCTS/COMPLETED OPERATIONS AGGREGATE LIMIT | **$5,000,000** |
| EACH OCCURRENCE LIMIT | **$5,000,000** |
| DEFENSE EXPENSES | **INSIDE THE LIMITS** |
| MEDICAL EXPENSE COVERAGE (CLINICAL TESTING ONLY) | **$10,000**     EACH PERSON |

### 2. ADVANCE POLICY PREMIUM          ███████

### 3. DEDUCTIBLE AMOUNTS

| | |
|---|---|
| **$1,000,000** | PER OCCURRENCE |
| **$2,000,000** | AGGREGATE |

### 4. ENDORSEMENTS ATTACHED TO THIS POLICY          SEE ATTACHED SCHEDULE

### 5. FOR CLASSIFICATIONS, CODES, PREMIUM BASIS, RATES AND ADVANCE PREMIUM, SEE THE ATTACHED COMPOSITE RATE ENDORSEMENT.

BY: _____          DATE: _____12/27/2018_____
Authorized Representative

14280 Park Meadow Drive, Suite 300, Chantilly, Virginia 20151
800.356.6886 or 703.652.1389 (fax)
www.medmarc.com

312 08 16

**Noetic Specialty Insurance Company**

14280 Park Meadow Drive, Suite 300

Chantilly, VA  20151-2219

114 08 16

Page 1 of 1

| Named Insured | Effective Date | Policy Number |
|---|---|---|
| B. Braun of America Inc. | 12/31/2018 | N18PA380025 |

THIS ENDORSEMENT CHANGES THE COVERAGE FORM.  PLEASE READ IT CAREFULLY.

This endorsement modifies insurance provided under the following:

**PRODUCTS/COMPLETED  OPERATIONS  LIABILITY  COVERAGE  FORM**

**SCHEDULE OF ENDORSEMENTS**

The following forms are all part of this policy:

| | |
|---|---|
| Composite Rate Endorsement | 095 08 16 |
| Products Claims Made Coverage Form | CG 38 A 08 16 |
| Common Policy Conditions | I 00 17 11 98 |
| In Witness | 057 08 16 |
| Additional Insured-Controlling Interest | 157 08 16 |
| Additional Insured-Designated Person or Org | 163 08 16 |
| Exclusion-Designated Person | 180 08 16 |
| Service of Suit | 342 08 16 |
| Product Withdrawal Expense | 403 01 17 |
| Exclusion-Designated Product(s) | 404 08 16 |
| Broad Named Insured Endorsement | 407 08 16 |
| Schedule of Retroactive Dates | 408 08 16 |
| Personal and Advertising Injury Liability Coverage - Clinical Testing | 411 08 16 |
| Related Claims Coverage | 415 08 16 |
| Notice of Terrorism Coverage - Election | 416 08 16 |
| Notice of Terrorism Coverage - Notice | 417 08 16 |
| Medical Expenses - Clinical Testing | 502 02 17 |
| Policy Changes Endorsement | 507 06 17 |
| Earlier Notice of Cancellation By Us | C 02 24 10 93 |
| Pennsylvania Changes - Cancellation and | I 02 46 09 07 |

All other terms and conditions remain unchanged.

095 08 16
Page 1 of 1

THIS ENDORSEMENT CHANGES THE COVERAGE FORM.  PLEASE READ IT CAREFULLY.

This endorsement modifies insurance provided under the following:

**PRODUCTS/COMPLETED  OPERATIONS  LIABILITY  COVERAGE  FORM**

**COMPOSITE RATE ENDORSEMENT**

Except as stated, this endorsement is subject to all the terms and conditions of this policy:

A.  The premium shown on the Declarations page is the amount to be paid in advance of insurance becoming effective. This premium, as shown, is only an estimate of the total premium for this policy. You may, at anytime revise your estimate and adjust the premium you have placed on deposit.

B.  The advance premium will be held by us until the end of the policy period. At that time the final premium will be determined. If the earned premium exceeds the advance premium you have placed on deposit, including any mid-term changes, you will pay the excess to us. If the earned premium is less than the advance premium we will pay you. Any return premium will be subject to the terms and conditions of the minimum premium provisions. The final premium will be established no later than 180 days after the expiration of this policy.

C.  Each year, as part of the renewal process, we will review your account and make revisions as we deem appropriate. You may request that we review and re-rate your account any time. The rating basis in effect at the inception of your policy will govern that which will be used during the policy year for any changes made and reported to us, whether initiated by you or us.

D.  Your failure to cooperate is grounds for non-renewal of this policy at the completion of the current policy period.

| E.  Product Categories | Estimated Sales | $2 Mil Limit Rate per $1000 Sales | Excess of $2 mil limit rate per $1000 sales |
|---|---|---|---|
| Domestic    10725 - IV Infusion / Vascular Access | ██ ████ | █ ██ | █ ██ |
| Domestic    1141 - Distributor | █ ████ | █ ██ | █ ██ |
| Developed Premium: | | ██ | ██ |
| Minimum Term Premium: | | ██ | ██ |
| F.  Total Advance Premium: | ██ ████ █ | ██ | |

All other terms and conditions remain unchanged.



# LIFE SCIENCES
# PRODUCTS COMPLETED OPERATIONS LIABILITY
# COVERAGE FORM

(DEFENSE EXPENSES ARE INCLUDED WITHIN POLICY LIMITS)

**THIS INSURANCE PROVIDES CLAIMS MADE COVERAGE FOR CLAIMS THAT ARE FIRST MADE AGAINST
ANY INSURED DURING THE POLICY PERIOD.
PLEASE READ THE ENTIRE POLICY CAREFULLY.**

## Table of Contents

SECTION I – COVERAGES..................................................................................................................1

   A.   PRODUCTS/COMPLETED OPERATIONS BODILY INJURY AND PROPERTY DAMAGE LIABILITY ......1

   B.   MEDICAL EXPENSES – CLINICAL TESTING.................................................................................2

   C.   MEDICAL MONITORING EXPENSES .........................................................................................2

SECTION II – WHO IS AN INSURED ...............................................................................................3

SECTION III – LIMITS OF INSURANCE ...........................................................................................6

SECTION IV – EXCLUSIONS............................................................................................................6

SECTION V – RESPONSIBILITIES AND CONDITIONS.......................................................................9

SECTION VI – EXTENDED REPORTING PERIODS..........................................................................13

SECTION VII – DEFINITIONS .......................................................................................................13

Contains ISO copyrighted material, used with permission
Contains Medmarc copyrighted material

# LIFE SCIENCES
# PRODUCTS/COMPLETED OPERATIONS LIABILITY COVERAGE FORM

(DEFENSE EXPENSES ARE INCLUDED WITHIN POLICY LIMITS)

**THIS INSURANCE PROVIDES CLAIMS-MADE COVERAGE.**

**PLEASE READ THE ENTIRE POLICY CAREFULLY.**

Various provisions in this policy restrict coverage. Read the entire policy carefully to determine rights, duties, and what is and is not covered.

Throughout this policy the words "You" and "Your" refer to the **First Named Insured** shown in the Declarations, and any other person or organization qualifying as a **Named Insured** under this policy. The words "We," "Us," and "Our" refer to the Company providing this insurance.

Words and phrases that appear in boldface, other than section and paragraph headings, have a special meaning as found in Section VII – Definitions or elsewhere in this policy.

## SECTION I – COVERAGES
### A. PRODUCTS/COMPLETED OPERATIONS BODILY INJURY AND PROPERTY DAMAGE LIABILITY
#### 1. Insuring Agreement

  **a.** We will pay those sums, in excess of the **Deductible**, that the **Insured** becomes legally obligated to pay as **Damages** because of **Bodily Injury** or **Property Damage** to which this insurance applies. This insurance applies only if:

    **(1)** the **Bodily Injury** or **Property Damage** is included within the **Products/Completed Operations Hazard;**

    **(2)** the **Bodily Injury** or **Property Damage** is caused by an **Occurrence** that takes place in the **Coverage Territory;**

    **(3)** the **Bodily Injury** or **Property Damage** did not occur before the **Retroactive Date**, if any, shown in the Declarations or after the end of the policy period, provided that, any **Bodily Injury** or **Property Damage** that commences before the **Retroactive Date** and continues after the **Retroactive Date** will be deemed to have occurred before the **Retroactive Date**;

    **(4)** a **Claim** because of **Bodily Injury** or **Property Damage** is first made against any **Insured** during the policy period or any Extended Reporting Period and is reported to us as soon as reasonably possible; and

    **(5)** the **Claim** did not arise out of a **Serious Adverse Event** that any **Insured** knew about prior to the effective date of this policy, but

did not report to us or another insurer prior to such effective date, or disclose on the Application for this insurance.

  **b.** A **Claim** by a person or organization seeking **Damages** will be deemed to have been first made when notice of such **Claim** is received by any **Insured** or by us, whichever comes first. Notice of a **Claim** by an agent or **Employee** of the **Insured** shall not constitute knowledge by an **Insured** unless an **Executive Officer**, corporate attorney, corporate risk manager, or individual charged with responsibility for the **Insured's** insurance administration received notice from said agent or **Employee**.

  **c.** **Bodily Injury** is deemed to occur at the earliest of:

    **(1)** **Bodily Injury** manifests such that it would be readily apparent to a reasonable person;

    **(2)** a professional medical opinion of **Bodily Injured** is rendered; or

    **(3)** **Medical Expenses** are incurred as a result of **Bodily Injury**.

  **d.** **Property Damage** is deemed to occur at the time of physical injury of tangible property or loss of use of tangible property.

  **e.** The amount we will pay for **Damages** is limited as described in Section III – Limits of Insurance.

  **f.** All **Claims** because of **Bodily Injury** or **Property Damage** to the same person or organization, including for care or loss of services of any person, shall be considered a single **Claim** and be deemed to have been first made at the time the first such **Claim** was made.

  **g.** We have the right to investigate and conduct negotiations and enter into a **Settlement** of any **Claim** as we deem expedient under this insurance or the applicable **Deductible**. If we enter into a **Settlement** of a **Claim** you must, within 30 days of our request, pay any amount of the **Settlement** and **Defense Expenses** that are within the **Deductible**. Your failure to remit the amount billed will be grounds for termination of your coverage. Any return premiums owed to you will reduce the amount owed to us.

#### 2. Notice of a Serious Adverse Event

If any **Insured** becomes aware, during the policy period, of a **Serious Adverse Event**, notice of it must be provided to us prior to the end of the policy period. Any **Claim** because of **Bodily Injury** arising out of the **Serious Adverse Event** shall be deemed to have been first made against the **Insured** at the time in which notice of the **Serious Adverse Event** was provided to us. The **Claim** must be reported to us as soon as reasonably possible.

**3. Defense Expenses**

    **a.** We will have the right and duty to defend the Insured against any **Claim** for **Bodily Injury** or **Property Damage** to which this insurance applies and to control the defense. For any **Suit** that is not a **Suit**, the duty to defend does not require us to retain counsel.

    **b.** We will pay **Defense Expenses** with respect to any **Claim** that we defend. These payments will contribute to the exhaustion of the **Deductible** and, upon exhaustion, will then reduce the limits of insurance.

    **c.** We have the right and duty to defend, including retaining counsel, even if the amount of the **Claim** is unspecified or less than the **Deductible**.

    **d.** Our right and duty to defend ends when we have used up the applicable limit of insurance in the payment of **Judgments**, **Settlements**, or **Defense Expenses**.

    **e.** In the event you are entitled by law to select independent counsel to defend you at our expense, the attorney fees and all other litigation expenses we must pay to that counsel are limited to the rates we actually pay to counsel we retain in the ordinary course of our business in defense of similar **Claims** in the community where the **Claim** is being defended. We have the right to require that such counsel have certain minimum qualifications with respect to their competency, including experience in defending **Claims** similar to the one made, and to require such counsel to have professional liability insurance coverage. As respects any such counsel, you agree that you and that counsel will timely respond to our requests for information regarding the **Claim** and cooperate fully with our investigation.

**B. MEDICAL EXPENSES – CLINICAL TESTING**

    **1. Insuring Agreement**.

        **a.** We will pay any **Medical Expenses**, in excess of the **Deductible**, for **Bodily Injury** to any **Test/Trial Subject** who is being treated or cared for in a medical facility arising out **Clinical Testing** of **Your Product** in which you are the **Sponsor** and to which this insurance applies, provided that:

        **(1)** the **Bodily Injury** did not occur before the **Retroactive Date**, if any, shown in the Declarations or after the end of the policy period, provided that, any **Bodily Injury** that commences before the **Retroactive Date** and continues after the **Retroactive Date** will be deemed to have occurred before the **Retroactive Date**;

        **(2)** the **Medical Expenses** are incurred and reported to us in writing within one year from the date that the **Bodily Injury** is known to the **Insured**.

    **b.** The **Test/Trial Subject** must submit to examination, at our expense, by physicians of our choice, as often as we reasonably require.

    **c.** We will pay **Medical Expenses** without regard to the **Insured** being legally obligated to pay such expenses.

    **d.** The amount we will pay for **Medical Expenses** is limited as described in Section III – Limits of Insurance.

    **2. Exclusions**

The following exclusions apply to Section **I.B.** – Medical Expenses – Clinical Testing.

This insurance does not apply to:

        **a.** **Medical Expenses** related to the deterioration of the existing health of the **Test/Trial Subject** which would have been incurred even without participation in the **Clinical Testing**.

        **b.** **Medical Expenses** incurred because the **Test/Trial Subject** contravened express instructions provided during the **Clinical Testing**.

**C. MEDICAL MONITORING EXPENSES**

    **1. Insuring Agreement**

We will pay any **Medical Monitoring Expenses**, in excess of the **Deductible**, which are directly related to a **Medical Monitoring Fund** established for **Your Product** or **Your Work** and to which this insurance applies, provided that:

    **a.** A **Claim** for **Medical Monitoring Expenses** is first made against any Insured after the **Medical Monitoring Fund** has been established and during the policy period and is reported to us as soon as reasonably possible; and

    **b.** Exposure to **Your Product** or **Your Work**, giving rise to the establishment of the **Medical Monitoring Fund**, did not occur before the **Retroactive Date**, if any, shown in the Declarations or after the end of the policy period. Any exposure that commences before the **Retroactive Date** and continues after the **Retroactive Date** will be deemed to have occurred before the **Retroactive Date**.

Contains ISO copyrighted material, used with permission
Contains Medmarc copyrighted material

2. All **Claims** for **Medical Monitoring Expenses** arising out of exposure to the same work or product giving rise to the **Medical Monitoring Fund** shall be deemed to have been made on the date the first such **Claim** was made.

3. The amount we will pay for **Medical Monitoring Expenses** is limited as described in Section III – Limits of Insurance.

**SECTION II – WHO IS AN INSURED**

1. If you are designated in the Declarations as:

   **a.  An individual**
   You and your **Spouse** are **Insureds**, but only with respect to the conduct of a business of which you are the sole owner.

   **b.  A partnership or joint venture**
   You are an **Insured**. Your members, your partners, and their **Spouses** are also **Insureds**, but only with respect to the conduct of your business.

   **c.  A limited liability company**
   You are an **Insured**. Your members are also Insureds, but only with respect to the conduct of your business. Your managers are **Insureds,** but only with respect to their duties as your managers.

   **d.  An organization other than a partnership, joint venture, or limited liability company.**
   You are an **Insured**. Your **Executive Officers** and **Directors** are **Insureds**, but only with respect to their duties as your **Executive Officers** or **Directors**. Your stockholders are also **Insureds**, but only with respect to their liability as stockholders.

   **e.  A Trust**
   You are an **Insured.** Your trustees are also **Insureds**, but only with respect to their duties as trustees.

2. Each of the following is also an **Insured**:
   However, no such person or organization is an **Insured** with respect to any liability arising out of the sole negligence of such person or organization.

   **a.  Medical Staff Members**
   Any member of your medical staff, such as a physician, medical director or medical review officer, nurse, emergency medical technician or paramedic, but only with respect to his or her legal liability for providing or failing to provide any supervisory or instructional services. This definition of an **Insured** shall not apply to the rendering of or failure to render **Professional Medical Services**.

   **b.  Employees and Volunteer Workers**
   Your **Employees** or **Volunteer Workers**, other than either your **Executive Officers** or **Directors** (if

you are an organization other than a partnership, joint venture, or limited liability company) or your managers (if you are a limited liability company), but only for acts within the scope of their employment by you or while performing duties related to the conduct of your business. This includes your field or sales representatives and service technicians providing technical expertise, product training and sales support to existing and prospective customers within or outside of health care facilities, in connection with the sale, loan, lease, or delivery of **Your Product**.
However, no **Employee** or **Volunteer Worker** is insured for:

   **(1) Bodily Injury**:

   **(a)**  to you, to your partners or members (if you are a partnership or joint venture), to your members (if you are a limited liability company), to your **Executive Officers** or **Directors** (if you are an organization other than a partnership), joint venture or limited liability company, or to a co-**Employee** while in the course of his or her employment or as he or she is performing duties related to the conduct of your business, or to your **Volunteer Workers** while performing duties related to the conduct of your business;

   **(b)**  to the **Spouse**, child, parent, brother, or sister of any person described in paragraph **a.** above; or

   **(c)**  For which there is any obligation to share **Damages** with or repay someone else who must pay **Damages** because of the injury described in paragraphs **a.** or **b.** above.

   **c.  Vendors**
   Any person(s) or organization(s) acting as your **Vendor**, but only with respect to **Damages** for, based upon, or arising out of **Your Products** which are distributed or sold in the regular course of the **Vendor**'s business, subject to the following additional exclusions.

   **(1)**  The insurance afforded to the **Vendor** does not apply to **Damages** arising out of:

   **(a)**  The assumption of liability in a contract or agreement. This exclusion does not apply to liability for **Damages** that the **Vendor** would have in the absence of the contract or agreement;

   **(b)**  Any express warranty unauthorized by you;

(c) Any biological, physical, or chemical change in the product made intentionally by the **Vendor**;

(d) Repackaging, unless unpacked solely for the purpose of inspection, demonstration, testing, dispensing of products in the required amount or dosage, or the substitution of parts under instructions from the manufacturer and then repackaged in the original container. This exclusion does not apply to repackaging of **Drugs** by a licensed pharmacist or to the transfilling of oxygen;

(e) Any failure to make such inspections, adjustments, tests, or servicing as the **Vendor** has agreed to make or normally undertakes to make in the usual course of business, in connection with the distribution or sale of the products;

(f) Demonstration, installation, servicing, or repair operations, except such operations performed in connection with the sale of **Your Product**, provided any demonstration is within the scope of the **Vendor's** duties and authority;

(g) Products which, after distribution or sale by you, have been labeled or relabeled--other than identification labels--or used as a container, part, or ingredient of any other thing or substance by or for the **Vendor**, except for the dispensing of products in the required amount of dosage; or

(h) The sole negligence of the **Vendor** for its own acts or omissions or those of its **Employees** or anyone else acting on its behalf.

**(2)** This insurance does not apply to any **Insured** person or organization, from whom you have acquired such products, or any ingredient, part or container, entering into, accompanying, or containing such products.

**(3)** No **Vendor** is insured for any **Bodily Injury** or **Property Damage** occurring prior to the effective date of the **Written Contract**.

**(4)** The insurance afforded to the **Vendor**:

(a) Only applies to the extent permitted by law;

(b) Shall be the lesser of:

(i) The amount you are required to provide under the **Written Contract** between you and the **Vendor**; or

(ii) The limits of coverage available under this policy.

(c) Shall expire the earlier of:

(i) The expiration of the **Written Contract** between you and the **Vendor**; or

(ii) The expiration date of this policy.

d. **Real Estate Managers**
Any person (other than your **Employee**) or any organization while acting as your real estate manager.

e. **Temporary Custodians of Your Property**
Any person or organization having proper temporary custody of your property if you die, but only:

(1) With respect to liability arising out of the maintenance or use of that property; and

(2) Until your legal representative has been appointed.

f. **Legal Representative If You Die**
Your legal representative if you die, but only with respect to duties as such. That representative will have all your rights and duties under this policy.

g. **Scientific Advisory Board or Data Safety Monitoring Committees**
Your **Scientific Advisory Board** or **Data Safety Monitoring Committee** and each member thereof, but only with respect to **Damages** for, based upon or arising out of activities performed on your behalf.

h. **Contract or Clinical Research Organization**
Any **Contract or Clinical Research Organization** and each member thereof, conducting **Clinical Testing**, on your behalf, of products manufactured or distributed by you, but only if **Clinical Testing** follows your testing protocols.

i. **Clinical Research Coordinators, Monitors, or Investigators**
Any person or organization conducting **Clinical Testing** on your behalf, of products designed, developed, manufactured, sold, handled, supplied, or distributed by you but only if **Clinical Testing** follows **Institutional Review Board** approved testing protocols.

j. **Institutional Review Boards or Medical Ethics Committees**
Any **Institutional Review Board** or **Medical Ethics Committee** and each member thereof, but only with respect to **Bodily Injury** and **Property Damage** for **Clinical Testing** performed on your behalf.

k. **Grantors of Licenses**

(1) Any grantor of a license to you, provided:

(a) The grant is made by **Written Contract**; and

**(b)** You are required to provide the grantor with such insurance as provided by this policy.

**(2)** However, no grantor is insured for any **Bodily Injury** or **Property Damage:**

    **(a)** Occurring prior to the effective date of the **Written Contract**; or

    **(b)** Caused by the sole negligence of the grantor for its own acts or omissions or those of its **Employees** or anyone else action on its behalf.

**(3)** The insurance afforded to the grantor:

    **(a)** Only applies to the extent permitted by law;

    **(b)** Shall be the lesser of:

        **(i)** The amount you are required to provide by the **Written Contract** between you and the Grantor; or

        **(ii)** The limits of coverage available under this policy.

    **(c)** Shall expire the earlier of:

        **(i)** The expiration of the **Written Contract** between you and the **Vendor**; or

        **(ii)** The expiration date of this policy.

**l.   Independent Engineers or Consultants**

Any independent engineer or consultant, but only with respect to liability for **Damages** caused, in whole or in part, by your acts or omissions or the acts or omissions of those acting on your behalf, in the performance of your ongoing operations performed by you or on your behalf.

**m.   Authorized Representative**

The person or organization designated by you in writing to act as an in-country liaison between you and the local regulatory body vested with authority over imported **Medical Devices**, **In-Vitro Diagnostics**, **Drugs**, or **Cosmetics** (such as the Ministries of Health in the European Union) in the country in which **Your Product** is being imported.

**n.   Product Registries**

Any **Product Registries** engaged or contracted by you to provide post-market safety and effectiveness surveillance services for **Your Products** after they have been cleared or approved for marketing.

**o.   Other Person or Organization**

Any other person or organization that you are required by **Written Contract** to provide insurance as provided by this policy, but only with respect to liability for **Bodily Injury** or **Property Damage** caused, in whole or in part, by **Your Product** or **Your Work** for the person or organization. If required by the **Written Contract**, the insurance afforded by this policy for the person or organization shall be primary and any insurance maintained by the person or organization shall be excess and non-contributory. However, no other person or organization is insured for any **Bodily Injury** or **Property Damage** occurring prior to the effective date of the **Written Contract** between you and the other person or organization.

The insurance afforded to the other person or organization:

**(1)** Shall be for the lesser of:

    **(a)** The amount you are required to provide by the **Written Contract**; or

    **(b)** The limits of coverage available under this policy; and

**(2)** Shall expire the earlier of:

    **(a)** The expiration of the **Written Contract**; or

    **(b)** The expiration date of this policy.

**p.   Subsidiary Organizations**

Any of your subsidiary organizations, other than a partnership or joint venture, that is not designated in the Declarations if:

**(1)** You maintain financial interest of more than 50% of the voting stock of the subsidiary organization on the first day of the policy period; and

**(2)** Such subsidiary organization is not an insured under similar insurance to that provided by this policy.

However, no subsidiary organization is insured for any **Damages** that occurred prior to, after, or at any point during which you maintained financial interest of 50% or less of the voting stock of the subsidiary organization.

**q.   Newly Acquired or Formed Organization**

Any organization you newly acquire or form, other than a partnership, joint venture, or limited liability company, and over which you maintain financial interest of more than 50% of the voting stock, will qualify as a **Named Insured** if there is no other similar insurance available to that organization. However:

**(1)** Coverage under this provision is afforded only until the 90th day after you acquire or form the organization or the end of the policy period, whichever is earlier; and

**(2)** Coverage does not apply to **Bodily Injury** or **Property Damage** that occurred before you acquired or formed the organization, unless otherwise agreed to in writing by us.

Contains ISO copyrighted material, used with permission
Contains Medmarc copyrighted material

No person or organization is an **Insured** with respect to the conduct of any current or past partnership, joint venture, or limited liability company that is not shown as a **Named Insured** in the Declarations.

## SECTION III – LIMITS OF INSURANCE

1. The Limits of Insurance shown in the Declarations are the most we will pay regardless of the number of:
   **a. Insureds**;
   **b. Claims** made; or
   **c.** Persons or organizations making **Claims**.
2. The Aggregate Limit is the most we will pay, collectively, for all **Damages**, **Defense Expenses**, **Medical Expenses**, and **Medical Monitoring Expenses** under this policy.
3. Subject to paragraph **2.** above, the Each Occurrence Limit is the most we will pay for **Damages** and **Defense Expenses** because of all **Bodily Injury** and **Property Damage** arising out of any single **Occurrence** covered under Section **I.A.**
4. Subject to paragraph **2.** above, the Medical Expenses Limit is the most we will pay for all **Medical Expenses** covered under Section **I.B.**
5. The Limits of Insurance for each of the coverages provided by this policy will apply excess of the **Deductible** even in the event of bankruptcy or insolvency of the **Insured** or the **Insured's** estate.
6. The Limits of Insurance for each of the coverages provided by this policy apply regardless if the policy period is more than or less than twelve (12) months, starting with the beginning of the policy period shown in the Declarations. If the policy period is extended by endorsement after the initial issuance of the policy, then the additional period will be deemed part of the last preceding period for purposes of determining the Limits of Insurance.

## SECTION IV – EXCLUSIONS

This insurance does not apply to:

1. **Asbestos**
   **Bodily Injury** or **Property Damage** for, based upon, or arising out of:
   **a.** Inhaling, ingesting, or exposure to asbestos or goods or products containing asbestos;
   **b.** The use of asbestos in constructing or manufacturing any goods, products, or structures;
   **c.** The removal of asbestos from any goods, products, or structures; or
   **d.** The manufacture, transportation, storage, handling, distribution, sale, application, mining, consumption, or disposal of asbestos or goods or products containing asbestos.

2. **Contractual Liability**

**Damages** for, based upon, or arising out of the assumption of liability in a contract or agreement. This exclusion does not apply to liability for **Damages**:
   **a.** That the **Insured** would have in the absence of the contract or agreement; or
   **b.** Assumed in a contract or agreement that is an **Insured Contract**, provided the **Bodily Injury** or **Property Damage** occurs subsequent to the execution of the contract or agreement. Solely for the purposes of liability assumed in an **Insured Contract**, reasonable attorneys' fees, and necessary litigation expenses incurred by or for a party other than an **Insured**, are deemed to be **Damages** because of **Bodily Injury** or **Property Damage**, provided:
      **(1)** Liability to such party for, or for the cost of that party's defense has also been assumed in the same **Insured Contract**; and
      **(2)** Such attorneys' fees and litigation expenses are for defense of that party against a **Suit** in which **Bodily Injury** or **Property Damage** to which this insurance applies is alleged.

3. **Damage to Your Property**
   **Property Damage** to:
   **a.** Property you own, rent, lease, occupy, or is loaned to you, including but not limited to any costs or expenses incurred by you, or any other person, organization, or entity, for repair, replacement, enhancement, restoration, or maintenance of such property for any reason, including prevention of injury to a person or damage to another's property;
   **b.** Premises you sold, gave away, or abandoned, if the **Property Damage** arises out of any part of those premises unless the premises were never occupied, rented, or held for rental by you; or
   **c.** Personal property in the care, custody, or control of the **Insured**.

4. **Damage to Your Product or Your Work**
   **a. Property Damage** to **Your Product**; or
   **b. Property Damage** to **Your Work** except if the damaged work or the work out of which the damage arises was performed on your behalf by a subcontractor.

5. **Data Breach**
   **Property Damage** for, based upon, or arising out of **Your Product** or **Your Work** allowing unauthorized access to or failing to prevent unauthorized disclosure of any person's or organization's confidential or personal information, including patents, trade secrets, processing methods, customer lists, financial information, credit card information, health information, and any nonpublic information.

This exclusion applies even if **Damages** are for notification costs, credit monitoring expenses, forensic expenses, public relations expenses, or any other loss, cost, or expense arising out of any access to or disclosure of any person's or organization's confidential or personal information.

6. **Delay or Failure**
   **Damages** for, based upon, or arising out of:
   **a.** A failure to meet the terms of cost or time estimates or guarantees;
   **b.** A failure to deliver **Your Product** or perform **Your Work**; or
   **c.** A failure to begin **Your Work** or any part of phase of **Your Work** as required by contract or agreement.

7. **Electronic Data**
   **Property Damage** for, based upon, or arising out of the loss of, loss of use of, damage to, corruption of, inability to access, or inability to manipulate **Electronic Data**.

8. **Employer's Liability**
   **Bodily Injury** to:
   **a.** An **Employee** of any **Insured** in the course of:
      **(1)** Employment by any **Insured**; or
      **(2)** Performing duties related to the conduct of the **Insured**'s business; or
   **b.** The **Spouse**, child, parent, brother, or sister of that **Employee** as a consequence of paragraph **a.** above.

   This exclusion applies whether the **Insured** may be liable as an employer or in any other capacity.

   This exclusion does not apply to voluntary participation of **Employees** in **Clinical Testing** sponsored by you, as such will not be deemed to be within the scope of their employment or performing duties related to the conduct of your business as described in paragraph **a.** above.

9. **Expected or Intended Injury**
   **Bodily Injury** or **Property Damage** that would reasonably be expected or intended from the standpoint of any person or organization acting in a similar situation as the **Insured**, even if the **Bodily Injury** or **Property Damage** is of a different type or degree than expected or intended.

   This exclusion does not apply to **Bodily Injury** arising out of side effects of or adverse reactions to **Your Product.**

10. **Infringement of Intellectual Property Rights**
    **Damages** for, based upon, or arising out of any actual or alleged infringement of intellectual property, including but not limited to patent, copyright, trade secret, trade name, trademark, trade dress, service mark, or other designation of origin or authenticity, or out of false marking or misappropriation.

11. **Loss of Use**
    **Property Damage** for, based upon, or arising out of loss of use of tangible property, other than **Your Product** or **Your Work** that:
    **a.** has not been physically injured; or
    **b.** incorporates **Your Product** or **Your Work** that is known of thought to be defective, deficient, inadequate or dangerous and such property can be restored to use solely by the repair, replacement, adjustment or removal of **Your Product** or **Your Work**.

12. **Nuclear Energy**
    **a.** **Damages:**
       **(1)** With respect to which an **Insured** under the policy is also an **Insured** under a nuclear energy liability policy issued by the Nuclear Energy Liability Insurance Association, Mutual Atomic Energy Liability Underwriters, Nuclear Insurance Association of Canada or any of their successors, or would be an **Insured** under any such policy but for its termination upon exhaustion of its limits of liability;
       **(2)** Resulting from the **Hazardous Properties** of **Nuclear Material** and with respect to which (a) any person or organization is required to maintain financial protection pursuant to the Atomic Energy Act of 1954, or any law amendatory thereof, or (b) the **Insured** is, or had this policy not been issued would be, entitled to indemnity from the United States of America, or any agency thereof, under any agreement entered into by the United States of America, or any agency thereof, with any person or organization; or
       **(3)** Under any Medical Payments coverage, to expenses incurred with respect to **Bodily Injury** resulting from the **Hazardous Properties** of **Nuclear Material** and arising out of the operation of a **Nuclear Facility** by any person or organization.
    **b.** **Damages** resulting from **Hazardous Properties** of **Nuclear Material**, if:
       **(1)** The **Nuclear Material** (a) is at any **Nuclear Facility** owned or operated by or on behalf of an **Insured** or (b) has been discharged or dispersed therefrom; or
       **(2)** The **Nuclear Material** is contained in **Spent Fuel** or **Waste** at any time possessed, handled, used, processed, stored, transported, or disposed of, by, or on behalf of any **Insured**; or
       **(3)** The **Damages** arise out of the furnishing by an **Insured** of services, materials, parts or equipment in connection with the planning,

construction, maintenance, operation, or use of any **Nuclear Facility**, but if such facility is located within the United States of America, its territories or possessions or Canada, this paragraph **(3)** of this exclusion applies only to **Property Damage** to such Nuclear Facility and any property thereat.

**c.** As used in this exclusion:

**(1) Hazardous Properties** includes radioactive, toxic, or explosive properties.

**(2) Nuclear Material** means **Source Material**, **Special Nuclear Material** or **By-product Material**.

**(3) Source Material**, **Special Nuclear Material** and **By-product Material** have the meanings given them in the Atomic Energy Act of 1954 or in any law amendatory thereof.

**(4) Spent Fuel** means any fuel element of fuel component, solid or liquid, which has been used or exposed to radiation in a **Nuclear Reactor**.

**(5) Waste** means any waste material (a) containing **By-product Material** other than the tailings or wastes produced by the extraction or concentration of uranium or thorium from any ore processed primarily for its **Source Material** content, and (b) resulting from the operation by any person or organization of any **Nuclear Facility** included under the first two paragraphs of the definition of **Nuclear Facility**.

**(6) Nuclear Facility** means:

**(a)** Any **Nuclear Reactor**; or

**(b)** Any equipment or device designed or used for (a) separating the isotopes of uranium or plutonium, (b) processing or utilizing **Spent Fuel**, or (c) handling, processing, or packaging **Waste**; or

**(c)** any equipment or device used for the processing, fabricating or alloying of **Special Nuclear Material** if at any time the total amount of such material in the custody of the **Insured** at the premises where such equipment or device is located consists of or contains more than 25 grams of plutonium or uranium 233 or any combination thereof, or more than 250 grams of uranium 235; or

**(d)** Any structure, basin, excavation, premises, or place prepared or used for the storage or disposal of **Waste**; and

**(e)** Includes the site on which any of the foregoing is located, all operations

conducted on such site and all premises used for such operations.

**(7) Nuclear Reactor** means any apparatus designed or used to sustain nuclear fission in a self-supporting chain reaction or to contain a critical mass of fissionable material.

**d. Property Damage** includes all forms of radioactive contamination of property.

This exclusion does not apply to **Damages** arising out of **Nuclear Material** or hazardous properties of **Your Product** or **Your Work**, including but not limited to the manufacture, sale, distribution, or servicing of radiation-emitting **Medical Devices**, radioactive isotopes, or radiopharmaceuticals cleared for marketing by any government health authority or regulatory body for a specific medical, diagnostic, research, or therapeutic indication for use.

**13. Pollution**

**a. Bodily Injury** or **Property Damage** which would not have occurred but for the actual, alleged, or threatened discharge, dispersal, seepage, migration, release, or escape of **Pollutants** at any time.

**b.** Any loss, cost, or expense arising out of any:

**(1)** Request, demand, or order or statutory or regulatory requirement that any **Insured** or others test for, monitor, clean up, remove, contain, treat, detoxify, neutralize, or in any way respond to, or assess the effects of **Pollutants**; or

**(2) Claim** by or on behalf of a governmental authority because of testing for, monitoring, cleaning up, removing, containing, treating, detoxifying, neutralizing, or in any way responding to, or assessing the effects of **Pollutants**.

**c.** This exclusion does not apply:

**(1)** where **Your Product** or **Your Work** was cleared by any government health authority or regulatory body for marketing with a specific indication for medical, diagnostic, or therapeutic use; or

**(2)** to **Bodily Injury** or **Property Damage** arising out of heat, smoke, or fumes from a **Hostile Fire** unless that **Hostile Fire** occurred or originated at any premises, site, or location:

**(a)** which is or was at any time used by or for any **Insured** or others for the handling, storage, disposal, processing, or treatment of waste; or

**(b)** which any **Insured** or any contractors or subcontractors working directly or indirectly on any **Insured**'s behalf are

performing operations to test for, monitor, clean up, remove, contain, treat, detoxify, neutralize, or in any way respond to, or assess the effects of **Pollutants**.

14. **Professional Medical Services Liability**
**Bodily Injury** for, based upon, or arising out of the rendering of or failure to render **Professional Medical Services**.

This exclusion does not apply to **Bodily Injury** for, based upon, or arising out of the providing or failing to provide emergency first aid or Good Samaritan services performed without expectation of compensation, by any of your **Employees** or **Volunteer Workers**.

15. **Recall of Products**
**Damages** claimed for any loss, cost, or expense incurred by any **Insured** for the loss of use, withdrawal, recall, inspection, repair, replacement, adjustment, removal, or disposal of **Your Product**, if such product is withdrawn or recalled from the market or from use because of a known or suspected defect, deficiency, inadequacy, or dangerous condition in such product.

This exclusion does not apply to **Damages** arising out of **Bodily Injury** or **Property Damage**.

16. **Securities, Financial Interest, and Antitrust**
**Damages** for, based upon, or arising out of:
a. The purchase, sale, offer of sale, or solicitation of any security, debt, bank deposit, or financial interest or instrument;
b. Any representation made at any time in relation to the price or value of any security, debt, bank deposit, or financial interest or instrument;
c. Any depreciation or decline in price or value of any security, debt, bank deposit, or financial interest or instrument; or
d. Violation of any antitrust law.

17. **War**
**Bodily Injury** or **Property Damage** for, based upon, or arising out of:
a. War, including undeclared or civil war;
b. Warlike action by a military force, including action in hindering or defending against an actual or expected attack, by any government, sovereign, or other authority using military personnel or other agents; or
c. Insurrection, rebellion, revolution, usurped power, or action taken by governmental authority in hindering or defending against any of these.

18. **Willful Acts and Violations of Law**

**Bodily Injury** or **Property Damage** for, based upon, or arising out of any willful, dishonest, fraudulent, criminal, or malicious act or omission committed by or at the direction of any **Insured**, or any violation of the laws and regulations of any government health authority or regulatory body establishing safety standards.

This exclusion includes, but it is not limited to, the promotion of **Your Product** for a use not cleared or approved by the appropriate regulatory body.

19. **Workers' Compensation and Similar Laws**
Any obligation of any **Insured** under a workers' compensation, disability benefits, or unemployment compensation law or any similar law.

**SECTION V – RESPONSIBILITIES AND CONDITIONS**
1. **Bankruptcy**
Bankruptcy or insolvency of the **Insured** or of the **Insured**'s estate will not relieve us of our obligations under this policy. However, bankruptcy or insolvency of the **Insured** or of the **Insured's** estate will not increase our obligations under this policy.
2. **Duties in the Event of a Claim**
a. **Notice of a Claim**
You must see to it that we are notified as soon as reasonably possible of any **Claim**. To the extent possible, notice should include:
(1) How, when, and where the **Occurrence** took place;
(2) The names and addresses of any injured persons and witnesses; and
(3) The nature and location of any injury or damage arising out of or resulting from the **Occurrence**.
b. **Assistance and Cooperation of the Insured**
You and any other involved **Insured** must:
(1) Immediately send us copies of any demands, notices, summonses, or legal papers received in connection with the **Claim**;
(2) Authorize us to obtain records and other information;
(3) Cooperate with us in the investigation, defense, and **Settlement** or other resolution of the **Claim**;
(4) Assist us, upon our request, in the enforcement of any right against any person or organization which may be liable to the **Insured** because of injury or damage to which this insurance may also apply.
c. **Obligations at Insured's Own Costs**
No **Insured** will, except at that **Insured**'s own cost, voluntarily make a payment, assume any obligation, or incur any expense, other than for

first aid, without our consent. This includes any amounts within the **Deductible**.

**d.** **Failure to Report**

Your failure to report a **Claim** as soon as reasonably possible to us will not invalidate coverage under this policy if you reported the **Claim** to another insurer. However, you must report any such **Claim** as soon as reasonably possible once you become aware of such error.

**3.** **Deductible**

Your obligations under the **Deductible** are:

**a.** With regard to any sums you pay toward your **Deductible**, you must provide us with copies of any bills paid, and any documents we reasonably require to support payments of such bills.

**b.** You must provide us with such documentation within ninety (90) days of the date such expenses are paid for us to credit your **Deductible** for those reasonable sums paid by you.

**4.** **Legal Action Against Us**

**a.** No person or organization has a right under this policy:

**(1)** To join us as a party or otherwise bring us into a **Suit** asking for **Damages** from an **Insured**; or

**(2)** To sue us on this policy unless all of its terms have been fully complied with.

**b.** A person or organization may sue us to recover on a **Settlement** or on a final **Judgment** against an **Insured**, but we will not be liable for **Damages** that are not payable under the terms of this policy, within the **Deductible**, or that are in excess of the applicable limit of insurance.

**c.** Any disputes between any **Insured** and us as to whether there is coverage under this policy must be filed in the courts of the United States of America (including its commonwealths, territories, and possessions).

**5.** **Suits Outside of the United States, Canada, or Puerto Rico**

**a.** If a **Suit** is brought in a part of the **Coverage Territory** that is outside the United States of America (including its territories and possessions) and we are prevented by law or otherwise from defending the **Insured**, the **Insured** will initiate a defense of the **Suit**. We will reimburse the **Insured** for any reasonable and necessary post-tender **Defense Expenses** incurred that we would have paid had we been able to exercise our right and duty to defend.

If the **Insured** becomes legally obligated to pay sums because of **Damages** to which this insurance applies in a part of the **Coverage Territory** that is

outside the United States of America (including its territories and possessions), and we are prevented by law or otherwise from paying such sums on the **Insured**'s behalf, we will reimburse the **Insured** for such sums, upon reasonable proof that payment was made by the **Insured**.

**b.** All payments for **Damages** because of **Judgments** or **Settlements** due to **Bodily Injury** or **Property Damage** will be made in U.S. currency at the prevailing exchange rate as published in *The Wall Street Journal* at the time the **Insured** became legally obligated to pay such sums.

All payments or reimbursements we make for **Defense Expenses** will be made in U.S. currency at the prevailing exchange rate as published in the *Wall Street Journal* at the time the expenses were incurred.

**c.** The **Insured** must fully maintain any Products/Completed Operations coverage required by law, regulation, or other governmental authority during the policy period, except for reduction of the Aggregate Limit due to payments of **Claims**, **Judgments**, or **Settlements**.

**d.** The coverage provided by this insurance will not act as a substitute for any compulsory insurance. Failure to maintain such coverage required by law, regulation or other governmental authority will not invalidate this insurance. However, this insurance will apply as if the required coverage by law, regulation, or other governmental authority was in full effect.

**6.** **Other Insurance**

If other valid and collectible insurance is available to the **Insured** for a loss we cover, our obligations are limited as follows:

**a.** **Primary Insurance**

This insurance is primary except when paragraph **b.** below applies. If this insurance is primary, our obligations are not affected unless any of the other insurance is also primary. Then, we will share with all the other insurance by the method described in paragraph **d.** below.

**b.** **Excess Insurance**

**(1)** This insurance is excess over, and does not share with, any other insurance, whether primary, excess, contingent or on any other basis, and whether or not collectible, that is effective prior to the beginning of the policy period shown in the Declarations of this insurance and applies, on other than a claims-made basis:

**(a)** No **Retroactive Date** is shown in the Declarations of this insurance; or

**(b)** The other insurance has a policy period which incepted before and continues after the **Retroactive Date** shown in the Declarations of this insurance; or

**(c)** The **Insured**'s liability to pay **Damages** is determined in a **Suit** brought outside the United States of America (including its commonwealths, territories, and possessions) or that is coverage required by law, regulation, or other governmental authority in a part of the **Coverage Territory** that is outside the United States of America (including its territories and possessions).

**(2)** This insurance is excess over any other primary insurance available to you covering liability for, based upon, or arising out of **Bodily Injury** or **Property Damage** for which you have been added as an additional insured.

**(3)** When this insurance is excess, we will have no duty to defend the **Insured** against any **Suit** if any other insurer has a duty to defend the **Insured** against that **Suit**. If no other insurer defends, we will undertake to do so, but we will be entitled to the **Insured**'s rights against all those other insurers.

**(4)** When this insurance is excess over other insurance, we will pay only our share of the amount of the loss, if any, that exceeds the sum of:

**(a)** The total amount that all such other insurance would pay for the loss in the absence of this insurance;

**(b)** The total of all deductibles or self-insured amounts under all the other insurance; and

**(c)** The **Deductible** of this policy.

We will share the remaining loss, if any, with any other insurance, unless it was bought specifically to apply in excess of the Limits of Insurance shown in the Declarations of this policy.

**c.** **Difference in Conditions and Difference in Limits**

**(1)** With respect to coverage provided by any other valid and collectible insurance available to you, this insurance shall apply:

**(a)** on an excess and difference-in-conditions ("DIC") basis over any primary or excess insurance available to you through a global consolidated or master control insurance program where the terms and conditions of this insurance are different from local underlying insurance, but only

for a loss we cover, where this insurance is broader.

**(b)** on a difference-in-limits ("DIL") basis with respect to the difference between the limits of liability provided by this insurance and the limits of insurance of local underlying insurance. In addition to the limits of liability being inclusive of, not in addition to, such local underlying insurance, any loss amounts sustained by you shall reduce the total limits of this policy's **Deductible**, provided you cooperate with us to the extent required under Section V – Responsibilities and Conditions of this policy.

**d.** **Method of Sharing**

If all of the other insurance permits contribution by equal shares, we will follow this method also. Under this approach each insurer contributes equal amounts until it has paid its applicable limit of insurance or none of the loss remains, whichever comes first.

If any of the other insurance does not permit contribution by equal shares, we will contribute by limits. Under this method, each insurer's share is based on the ratio of its applicable limit of insurance to the total applicable limits of insurance of all insurers.

**7.** **Premium Audit**

**a.** We will compute all premiums for this policy in accordance with our rules and rates.

**b.** Premium shown in this policy as advance premium is a deposit premium only. At the close of each policy period we will compute the audited earned premium for that period and send notice to the **First Named Insured**. If the sum of the advance premiums paid for the policy period is less than the audited earned premium, we will invoice the **First Named Insured** for the additional premium. The due date for remitting any additional audit premium is the date shown as the due date on the invoice. If the sum of the advance premiums paid for the policy period is greater than the audited earned premium, we will return the excess to the **First Named Insured**.

**c.** The **First Named Insured** must keep records of the information we need for premium computation, and send us copies at such times as we may request.

**8.** **Representations**

By accepting this policy, you agree:

**a.** The statements in the Declarations, Application and **Submission Materials** are your agreements and representations and each shall be deemed to

constitute a material representation made by all **Insureds**;

**b.** We have issued this policy in reliance upon your representations;

**c.** In the event of any fraud, material misrepresentation, or omission by any **Insured** in any application, renewal application, or **Submission Materials**, this policy is void as to that **Insured** and no coverage is afforded to that **Insured**. However, your failure to disclose all hazards relating to the conduct of your business existing as of the inception date of this policy shall not prejudice you with respect to the coverage afforded by this policy provided such failure or omission was not intentional.

**d.** This policy, together with the Declarations, Application, and **Submission Materials**, is the entire agreement between you and us.

**9. Separation of Insureds**

Except with respect to the Limits of Insurance, and any rights or duties specifically assigned in this policy to the **First Named Insured**, this insurance applies:

**a.** As if each **Named Insured** were the only **Named Insured**; and

**b.** Separately to each **Insured** against whom a **Claim** is made.

**10. Your Right To Claim and Serious Adverse Event Information**

Upon request, we will provide the **First Named Insured** the following information relating to this and any products/completed operations liability policy we have issued to the **First Named Insured** during the previous five (5) years:

**a.** A list or other record of each **Serious Adverse Event**, not previously reported to any other insurer, of which we were notified in accordance Section I – Coverages paragraph **A.2.** – Notice of Serious Adverse Event. We will include the date and brief description of the **Serious Adverse Event** if that information was in the notice we received.

**b.** A summary by policy year, of payments made and amounts reserved.

Amounts reserved are based on our judgment. They are subject to change and should not be regarded as ultimate settlement values. You must not disclose this information to any claimant or any claimant's representative without our consent.

If we cancel or elect not to renew this policy, we will provide the information listed in this condition no later than thirty (30) days before the date of policy cancellation or termination.

In other respects, we will provide this information only if we receive a written request from the **First Named Insured** within sixty (60) days after the end of the policy period. In this case, we will provide this information within forty-five (45) days of receipt of the request.

We compile **Claim** and **Serious Adverse Event** information for our own business purposes and exercise reasonable care in doing so. In providing this information to the **First Named Insured**, we make no representations or warranties to **Insureds**, insurers, or others to whom this information is furnished by or on behalf of any **Insured**. Cancellation or nonrenewal will be effective even if we inadvertently provide inaccurate information.

**11. Transfer Of Rights Of Recovery Against Others To Us**

**a.** If the **Insured** has rights to recover all or part of any payment we have made under this policy, those rights are transferred to us. The **Insured** must do nothing after loss to impair them. At our request, the **Insured** will bring suit or transfer those rights to us and help us enforce them.

**b.** Notwithstanding anything to the contrary in this paragraph **a.** above, in the event of any payment under this policy we waive our right of recovery against any person or organization with respect to which the **Insured** has agreed to waive its right of recovery in a **Written Contract**.

**c.** It is further agreed that work commenced under letter of intent or work order, subject to subsequent reduction to writing, with customers whose customary contracts would require a waiver of recovery rights against them also falls within this blanket waiver of subrogation**.**

**12. Transfer of Control of Defense**

If we conclude that, based on **Claims** which have been reported to us and to which this insurance may apply, the limit of insurance for **Damages** is likely to be used up in the payment of **Judgments**, **Settlements**, or **Defense Expenses**, we will notify the **First Named Insured**, in writing, to that effect. The **First Named Insured**, and any other **Insured** involved in any pending **Claims** seeking **Damages**, must cooperate with us in the transfer of the defense of such **Claims** as instructed by the **Insured**. The **Insured** shall be responsible for any **Defense Expenses** incurred on account of any failure to so cooperate.

**13. When We Do Not Renew**

If we decide not to renew this policy, we will mail or deliver to the **First Named Insured** shown in the Declarations and to the producer of record, advance written notice of the nonrenewal, stating the reason for nonrenewal, not less than sixty (60) days before the expiration date.

If notice is mailed, proof of mailing will be sufficient proof of notice.

**14. Failure to Remit**

Your failure to remit the amount billed to you as premium will be grounds for termination of your coverage. Any return premiums owed to you will reduce the amount owed to us.

**15. Conflict in Terms or Conditions**

In the event the terms and conditions of an **Insured Contract** or **Written Contract** concerning any obligations with respect to insurance or defense of a **Claim**, conflict with the terms and conditions of this policy, the terms and conditions of this policy shall apply.

**SECTION VI – EXTENDED REPORTING PERIODS**

**1.** We will provide one or more Extended Reporting Periods, as described below, if:

**a.** This policy is cancelled or not renewed for any reason, except for non-payment of premium; or

**b.** We renew or replace this policy with other insurance that:

**(1)** Has a **Retroactive Date** later than the date shown in the Declarations of this policy; or

**(2)** Does not apply to **Bodily Injury** or **Property Damage** on a claims-made basis.

**2.** Extended Reporting Periods do not extend the policy period or change the scope of coverage provided. They apply only to Claims first made during the Extended Reporting Period for Bodily Injury or Property Damage that occurred after the Retroactive Date, if any, shown in the Declarations, and before the end of the policy period.

Once in effect, Extended Reporting Periods may not be cancelled.

A **Claim** first made during an Extended Reporting Period will be deemed to have been made on the last day of the policy period.

An Extended Reporting Period does not reinstate or increase the Limits of Insurance.

**3.** A Basic Extended Reporting Period is automatically provided without additional charge. This period starts with the end of the policy period and lasts for:

**a.** Six (6) years, with respect to **Claims** because of **Bodily Injury** or **Property Damage** for, based upon or arising out of an **Occurrence** reported to us, not later than ninety (90) days after the end of the policy period; and

**b.** Ninety (90) days, with respect to **Claims** because of **Bodily Injury** or **Property Damage** for, based upon, or arising out of an **Occurrence** not previously reported to us.

The Basic Extended Reporting Period does not apply to **Claims** that are covered under any subsequent insurance you purchase, or that would be covered but for the exhaustion of the amount of insurance applicable to such **Claims**.

**4.** An optional Supplemental Extended Reporting Period of up to six (6) years duration is available, with respect to **Claims** because of **Bodily Injury** or **Property Damage**, for, based upon, or arising out of an **Occurrence** not previously reported to us, but only for an extra charge. This Supplemental Extended Reporting Period starts when the Basic Extended Reporting Period, set forth in paragraph **3.** Above, ends.

You must give us a written request for a Supplemental Extended Reporting Period within ninety (90) days after the end of the policy period. The Supplemental Extended Reporting Period will not go into effect unless you pay the additional premium promptly when due.

We will determine the actual premium for the Supplemental Extended Reporting Period in accordance with our rules and rates. In doing so, we may take into account the following:

**a.** The exposures or hazards insured against;

**b.** Previous types and amounts of insurance;

**c.** Limits of Insurance available under this policy for future payment of **Damages**; and

**d.** Other related factors.

The additional premium will not exceed 200% of the annual premium for this policy and is fully earned when the Supplemental Extended Reporting Period endorsement takes effect.

The Supplemental Extended Reporting Period endorsement shall set forth the terms, not inconsistent with this Section, applicable to the Supplemental Extended Reporting Period, including a provision that the insurance afforded for **Claims** first made during the Supplemental Extended Reporting Period is excess over any valid and collectible insurance available under policies in force after the Supplemental Extended Reporting Period starts**.**

**SECTION VII – DEFINITIONS**

**1. Administrative Costs** means those reasonable and necessary legal expenses incurred by you and directly related to the establishment of a **Medical Monitoring Fund. Administrative Costs** do not include **Defense Expenses.**

2. **Biologic** or **Biological Product** means a virus, therapeutic serum, toxin, antitoxin, vaccine, blood, blood component or derivative, allergenic product, or analogous product, or arsphenamine, or derivative of arsphenamine, or any other trivalent organic arsenic compound, applicable to the prevention, treatment or cure of a disease or condition of human beings.

3. **Bodily Injury** means:
   a.  Physical harm, sickness, or disease sustained by a person, including death resulting from any of these at any time; and
   b.  Any mental anguish, mental injury, disability, shock, fright or humiliation sustained by that person or by any relative of that person as a result of such physical harm, sickness, disease, or death.

4. **Claim** means:
   a.  Written notice received by any **Insured**, from any party, demanding money, services, or other compensation resulting from an **Occurrence** or stating that it is the intention of such party to hold any **Insured** responsible for an **Occurrence**; or
   b.  a **Suit**.

5. **Clinical Testing** means any pre-clinical evaluation, clinical trial, or healthy volunteer study approved by a competent regulatory authority and carried out with the intention of verifying the safety, efficacy, bioavailability or other properties of a **Medical Device**, **Drug**, **Biologic**, or other diagnostic or therapeutic product or process including **Compassionate Use**, or **Expanded Access Program or Named Patient Program**.

6. **Compassionate Use** means the emergency use of a **Medical Device**, **Drug**, or **Biological Product**, other than the diagnostic or therapeutic product that is the subject of **Clinical Testing,** during a clinical trial on a human **Test/Trial Subject** in need of medical intervention because of a life threatening medical condition, if:
   a.  such human **Test/Trial Subject** is incapable of giving **Informed Consent**, either directly or through an authorized legal representative;
   b.  no generally accepted treatment for the life threatening medical condition is available;
   c.  there is insufficient time to obtain government regulatory approval for such use; and
   d.  such use is in strict compliance with all applicable laws, rules and regulations.

7. **Contract or Clinical Research Organization** means a person or an organization who is contracted to design, manage, monitor, or analyze pre-**Clinical Testing** and **Clinical Testing** for a **Sponsor**. The duties can include, but are not limited to, recruitment and enrollment of clinical **Investigators**, investigational sites, and **Test/Trial Subjects**; design and general medical supervision of new study protocols (including the informed consent documents) for treatment of new indications; collection and evaluation of clinical data and preparation of regulatory filings with/for government agencies.

8. **Coroner's Inquest** means a non-adversarial, fact-finding inquiry conducted by a governmental entity, pursuant to an order or demand by the United Kingdom's Medicines and Healthcare Regulatory Agency or similar entity in another country, into the death of a specific person having had exposure to **Your Product** or **Your Work**.

9. **Coroner's Inquest Expenses** means those costs incurred by an **Insured** which are directly related to a **Coroner's Inquest** but do not include any expenses incurred by an Insured to produce records requested by the United Kingdom's Medicines and Healthcare Regulatory Agency or similar entity in another country including but not limited to manufacturing protocols or records, clinical study records, and incident history.

10. **Cosmetic** means an article intended to be rubbed, poured, sprinkled, or sprayed on, introduced into, or otherwise applied to the human body for cleansing, beautifying, promoting attractiveness, or altering the appearance.

11. **Coverage Territory** means anywhere in the world, including the regions of space beyond Earth and its atmosphere, with the exception of any country or jurisdiction which is subject to trade or other economic sanction or embargo by the United States of America---Department of Commerce's Bureau of Industry and Security and/or Department of Treasury's Office of Foreign Assets Control.

12. **Damages**
   a.  Means money:
       (1) awarded in a **Suit**; or
       (2) the payment of which an **Insured** is obligated to make under a binding **Settlement**; and
   b.  Includes:
       (1)  punitive damages when and to the extent permitted by law in the jurisdiction in which the **Damages** were awarded or the **Settlement** was entered; and
       (2) **Coroner's Inquest Expenses**.
   c.  **Damages** because of **Bodily Injury** includes payment for care, loss of services or death resulting at any time from the **Bodily Injury**.

**d. Damages** does not include:
- **(1)** fines or penalties imposed by law, regulation, or regulatory authority;
- **(2)** taxes; or
- **(3)** the return or restitution of fees, profits or charges for **Your Work** or **Your Product**; or
- **(4)** fines, penalties or monies demanded by or awarded to a government in an action to recover its costs for health care and treatment.

**13. Data Safety Monitoring Committee** means an independent group of experts external to a study established by the **Sponsor** to assess at intervals the progress of **Clinical Testing**, the safety data, and the critical efficacy endpoints, and to recommend to the **Sponsor** whether to continue, modify, or stop a trial.

**14. Deductible** means the amount that you or any **Insured** pays for:
- **a. Damages** because of **Bodily Injury** or **Property Damage**;
- **b. Medical Expenses;**
- **c. Medical Monitoring Expenses;**
- **d. Defense Expenses;** or
- **e.** any combination of **a.** through **d.**

**15. Defense Expenses** means the reasonable and necessary costs and expenses of investigation, adjustment, appraisal, defense and appeal paid or incurred by the **Insured** or by us in respect of a **Claim** or **Suit**.

- **a. Defense Expenses** also include:
  - **(1)** All expenses we incur;
  - **(2)** The premium for any bonds to release attachments, but only for bond amounts within the applicable limit of insurance. We do not have to obtain or furnish these bonds;
  - **(3)** All reasonable expenses incurred by the **Insured** at our request to assist us in the investigation or defense of the **Claim** or **Suit**, including actual loss of earnings up to $1000 a day because of time off from work;
  - **(4)** All court costs assessed against the **Insured** in the **Suit**. However, these payments do not include attorneys' fees and attorneys' expenses taxed against the **Insured**;
  - **(5)** Prejudgment interest awarded against the **Insured** on that part of the **Judgment** we pay. If we make an offer to pay the applicable limit of insurance, we will not pay any prejudgment interest accruing after the offer; and
  - **(6)** All interest on the full amount of any **Judgment** that accrues after entry of the **Judgment** and before we have paid, offered to pay, or deposited in court the part of the **Judgment** that is within the applicable limit of insurance.

- **b. Defense Expenses** do not include:
  - **(1)** salaries or expenses of our employees or the **Insured's Employees**; or
  - **(2)** salaries or expenses of independent adjustors; or
  - **(3)** fees, costs or expenses related to coverage opinions.

**16. Dietary Supplement** means a product that is intended to supplement the diet and bears or contains one or more of the following dietary ingredients: a vitamin, a mineral, an herb or other botanical (excluding tobacco), an amino acid, a dietary substance for use by people to supplement the diet by increasing the total dietary intake, or a concentrate, metabolite, constituent, extract, or combination of any of the above; is intended for ingestion in pill, capsule, tablet, or liquid form; is not represented for use as a conventional food or as the sole item of a meal or diet; and is labeled as a **Dietary Supplement**.

**17. Director** means a member of a group of persons chosen to control or govern the affairs of a corporation or company. The whole of the directors collectively forms the board of directors.

**18. Domestic Partner** means any person qualifying as such under federal, state, or local law or under your employee benefit plans.

**19. Drug** means any of the following products: a substance
- **a.** recognized in an official **Pharmacopoeia** or **Formulary**;
- **b.** intended for use in the diagnosis, cure, mitigation, treatment, or prevention of disease;
- **c.** other than food intended to affect the structure or function of the body; or
- **d.** intended for use as an ingredient of a medicine but not a device or a component, part, or accessory of a device.

**20. Electronic Data** means information, facts or programs stored as or on, created or used on, or transmitted to or from, computer software, including systems and applications software, hard or floppy disks, CD-ROMS, tapes, drives, cells, data processing devices, or any other media which are used with electronically controlled equipment.

**21. Employee** means a person employed by you under an express or implied contract and the employer has the right to control the work performed. **Employee** includes **Leased Workers** but not **Temporary Workers.**

**22. Expanded Access Program or Named Patient Program** means any program that allows patients who do not qualify for clinical trials to access new medications for treatment purposes before those medications have been licensed for marketing in their country, if no suitable alternative is available or exists.

Contains ISO copyrighted material, used with permission
Contains Medmarc copyrighted material

23. **Executive Officer** means a person holding any of the officer positions created by the **Insured's** charter, constitution, by-laws or any other similar governing document.

24. **First Named Insured** means the person or entity listed first on the policy Declarations page as an insured. This **First Named Insured** is granted certain rights and responsibilities that do not apply to the policy's other **Named Insureds**, such as premium payment obligations and the receipt of cancellation notice and return premiums.

25. **Formulary** means a manual containing a list of medicines that are approved for prescription throughout a country. It includes key information on the composition, description, selection, prescribing, dispensing, and administration of medicines.

26. **Grand Rounds** means meetings during which medical doctors or physicians discuss the clinical case of one or more patients.

27. **Hostile Fire** means a fire which becomes uncontrollable or breaks out from where it was intended to be.

28. **Informed Consent** means consent by a **Test/Trial Subject** to a surgical or medical procedure, or participation in **Clinical Testing,** after being informed of the relevant medical facts and the risks involved. This process includes subject recruitment materials, verbal instructions, written materials, question and answer sessions, and agreement documented by signature.

29. **Institutional Review Board** means any board, committee, or other group, and each of its members thereof, formally designated by an institution, to review, to approve the initiation of, and to conduct periodic review of, biomedical research involving subjects and established to protect the rights and welfare of human subjects in such investigations.

30. **Insured** means any person or organization qualifying as such under Section II - Who Is An Insured.

31. **Insured Contract**
    a. Means any **Written Contract** under which you agree to indemnify another person or organization for **Tort Liability**.
    b. **Insured Contract** does not include any agreement to indemnify a person or organization for the sole negligence of such person or organization.

32. **Investigator** means an individual, or the responsible leader of a team of individuals, under whose direction a test product is administered or dispensed to, or used in connection with, a **Test/Trial Subject**.

33. **In-vitro diagnostic** means any reagents, instruments, and systems intended for use in diagnosis of disease or other condition, including a determination of the state of health, in order to cure, mitigate, treat, or prevent disease or the condition resulting from a disease. Such products are intended for use in the collection, preparation, and examination of specimens taken from the human body.

34. **Judgment** means the official decision of a court or administrative tribunal that finally adjudicates the respective rights and claims of the parties to a **Suit**.

35. **Leased Worker** means a person leased to you by a labor leasing firm under an agreement between you and the labor leasing firm, to perform duties related to the conduct of your business. **Leased Worker** does not include a **Temporary Worker**.

36. **Medical Device** means any instrument, apparatus, implement, machine, contrivance, implant, in vitro reagent, or other similar or related article, including a component part or accessory, and which is:
    a. recognized in an official national **Formulary** or **Pharmacopoeia**, or any supplement to them;
    b. intended for use in the diagnosis of disease or other conditions, or in the cure, mitigation, treatment, or prevention of disease, in humans or animals; or
    c. intended to affect the structure or any function of the body of humans or animals, and which does not achieve any of its primary intended purposes through chemical action within or on the body of humans or animals and which is not dependent upon being metabolized for the achievement of any of its primary intended purposes.

37. **Medical Ethics Committee** means any independent and properly constituted competent body and each member thereof whose responsibility is to ensure that the safety, well-being and human rights of the subjects who are participating in a clinical investigation are protected.

38. **Medical Expenses** means reasonable expenses for**:**
    a. First aid administered at the time of an accident;
    b. Necessary medical, surgical, x-ray and dental services, including prosthetic devices; and
    c. Necessary ambulance, hospital, professional nursing, and funeral services.

39. **Medical Monitoring Expenses** means those costs incurred by a claimant and which are to be paid from a **Medical Monitoring Fund**. **Medical Monitoring Expenses** include **Administrative Costs.**

40. **Medical Monitoring Fund** means a monetary fund established either pursuant to a court order or a court approved settlement agreement from which **Medical Monitoring Expenses** are to be paid to claimants.

Contains ISO copyrighted material, used with permission
Contains Medmarc copyrighted material

41. **Named Insured** means any entity or individual named in the Declarations.
42. **Nutraceutical** means a food (or part of a food) that provides medical or health benefits, including the prevention and/or treatment of a disease.
43. **Occurrence** means an accident, including continuous or repeated exposure to substantially the same general harmful conditions.
44. **Pharmacopoeia** means a book published by the authority of a government or a medical or pharmaceutical society that contains a description of chemicals, **Drugs**, and other substances and how they are to be used.
45. **Pollutants** means any solid, liquid, gaseous, or thermal irritant or contaminant, including smoke, vapor, soot, fumes, acid, alkalis, chemicals, and waste. Waste includes materials to be recycled, reconditioned, or reclaimed.
46. **Products/Completed Operations Hazard**:
    a. Includes:
        (1) **Bodily Injury** and **Property Damage** occurring away from premises you own or rent and arising out of **Your Work** or **Your Product**;
        (2) **Bodily Injury** and **Property Damage** arising on premises you own or rent, if such **Bodily Injury** or **Property Damage** arises out of **Your Product** while being used for its intended purpose;
        (3) **Bodily Injury** and **Property Damage** arising while **Your Product** is still in your physical possession if such **Bodily Injury** or **Property Damage** arises out of **Your Product** while being used for its intended purpose;
        (4) **Bodily Injury** and **Property Damage** arising out of products being rented, leased, loaned, or held for sale, demonstration or trial purposes by you; and
        (5) **Bodily Injury** and **Property Damage** arising out of **Clinical Testing** of **Your Product**.
    b. Does not include **Your Work** that has not yet been completed or abandoned. However, **Your Work** will be deemed completed at the earliest of the following times:
        (1) When all of the work called for in your **Written Contract** has been completed;
        (2) When all of the work to be done at the job site has been completed if your **Written Contract** calls for work at more than one job site;
        (3) When that part of the work done at a job site has been put to its intended use by any person or organization other than another contractor or subcontractor working on the same project; or

        (4) Work that may need service, maintenance, correction, repair or replacement, but which is otherwise complete, will be treated as completed.

47. **Product Registries** means any independent or government-organized systems that use observational study methods to collect uniform data (clinical and other) to evaluate the specified outcomes, effectiveness, comparative clinical effectiveness, and appropriateness of **Medical Devices**, **Drugs**, or **Biologics** for human populations defined by a particular disease, condition, or exposure, and that serve predetermined scientific, clinical, or policy purpose(s). Registry databases are the files derived from the registries.
48. **Professional Medical Services** means any medical, surgical, dental, pharmacy, psychiatric, mental health, chiropractic, osteopathic, nursing or other professional health care or treatment provided to any individual, including but not limited to:
    a. the prescribing of **Drugs** or medical, dental or surgical supplies, devices or appliances;
    b. administration or infusion of medication, blood and blood products;
    c. making a medical diagnosis of a patient's condition for the purpose of instituting treatment;
    d. diagnosis based on assessment, planning, intervention and evaluation of a patient or Test/Trial Subject;
    e. performing a surgical procedure;
    f. interpreting test results;
    g. diagnostic, referral, or similar services including but not limited to performing blood tests and managing drug therapy; or
    h. the performance of post-mortem examinations on human bodies.

49. **Property Damage** means:
    a. physical injury to tangible property other than **Your Product** or **Your Work**; or
    b. loss of use of tangible property, other than **Your Product** or **Your Work** that:
        (1) has been physically injured; or
        (2) incorporates **Your Product** or **Your Work** that is known or thought to be defective, deficient, inadequate or dangerous and such property cannot be restored to use solely by the repair, replacement, adjustment or removal of **Your Product** or **Your Work**.
    For the purposes of this insurance, **Electronic Data** is not tangible property.
50. **Retroactive Date** means the date specified as such in the Declarations.

51. **Scientific Advisory Board** means a body composed of medical specialists and each thereof, established to:
   a. review any new **Medical Device**, **Drug**, **Biologic**, or other diagnostic or therapeutic product or processes that have been presented to you or
   b. provide advice on scientific or technological developments that affect the company.

52. **Serious Adverse Event** means an undesirable experience associated with **Your Product** where the outcome to the patient:
   a. is life threatening;
   b. is death;
   c. required hospitalization (initial or prolonged);
   d. is disability or permanent damage;
   e. is a congenital anomaly or birth defect;
   f. required intervention to prevent permanent impairment or damage; or
   g. required medical intervention to prevent one of the outcomes **a.** through **f.** immediately above.

53. **Settlement** means the resolution of a **Claim**. A **Judgment** is not a **Settlement**.

54. **Soap** means a product whose bulk of nonvolatile matter consists of an alkali salt of fatty acids and the product's detergent properties are due to the alkali-fatty acid compounds, and the product is labeled, sold, and represented solely as soap.

55. **Sponsor** means a person or organization who initiates or conducts **Clinical Testing** or laboratory research and assumes responsibility for its administration and/or financing.

56. **Spouse** means one's lawful husband or wife or a **Domestic Partner**.

57. **Submission Materials** means any materials or information provided by you or on your behalf pursuant to a request from us in connection with the application process for this coverage.

58. **Suit** means a civil proceeding in which **Bodily Injury** or **Property Damage** to which this insurance applies are alleged.
   a. **Suit** includes:
      (1) An arbitration proceeding to which the **Insured** must submit or does submit with our consent including a claim for injunctive relief to prevent such **Bodily Injury** or **Property Damage** from continuing or resuming; or
      (2) Any other alternative dispute resolution proceeding to which the **Insured** submits with our consent.
   b. **Suit** does not include any action initiated by a government entity with the exception of **Coroner's Inquests**.

59. **Temporary Worker** means a person who is furnished to you to substitute for a permanent **Employee** on leave or to meet seasonal or short-term workload conditions.

60. **Test/Trial Subject** means an individual who is a participant in **Clinical Testing,** either as a recipient of the diagnostic or therapeutic product(s) or as a control.

61. **Tort Liability** means liability for **Damages** incurred by a person or organization and that would otherwise be imposed by law upon such person or organization in the absence of a **Written Contract**.

62. **Trust** means a fiduciary arrangement in which one party gives another party the right to hold title to property or assets for the benefit of a third party, the beneficiary.

63. **Vendor**
   a. means a distributor or seller of **Your Product**;
   b. includes any person, other than the manufacturer, who furthers the marketing or sale of **Your Product** from the original place of manufacture to the person who makes final delivery or sale to the ultimate user.

64. **Volunteer Worker** means a person who:
   a. Is not your **Employee**;
   b. Donates his or her work;
   c. Acts at the direction of and within the scope of duties determined by you; and
   d. Is not paid a fee, salary, or other compensation by you or anyone else for their work performed for you.

65. **Warranty** means an express or implied promise that something in furtherance of a contract is guaranteed by one of the contracting parties.

66. **Written Contract**
   a. Means an agreement in writing between you and another party related to **Your Product** or **Your Work**; and
   b. Includes an oral contract and oral agreement, provided such contract or agreement is reduced to writing and signed by you and such person or organization within ninety (90) days after such contract or agreement has been orally entered into.

67. **Your Product**:
   a. **Means:**
      (1) Any **Medical Device**, **Drug**, **Biologic**, **In-vitro Diagnostic**, **Cosmetic**, **Soap**, **Nutraceutical**, **Dietary Supplement**, animal, other diagnostic or therapeutic products or processes, or any component thereof, other than real property, and, unless specifically excluded, any other product(s) other than real property designed, developed, manufactured, sold, handled, or distributed by:
         (a) You;
         (b) Others trading under your name; or
         (c) A person or organization whose business or assets you have acquired;

      **(2)** Containers (other than vehicles), materials, technology, parts, or equipment furnished in connection with such goods or products; and

      **(3)** Goods, products, or equipment leased, loaned, or held for sale, demonstration, or trial purposes.

  **b.** **Includes:**

      **(1)** **Warranties** or representations made at any time with respect to the fitness, quality, durability, performance, or use of **Your Product;** and

      **(2)** The providing of or failure to provide consultation or educational services, training, advice, warnings, or instructions in the use and care of any products.

**68. Your Work**:

  **a.** **Means:**

      **(1)** Work or operations performed by you or on your behalf, and includes technology, materials, parts, or equipment furnished in connection with such work or operations, including mobile cadaver training laboratories.

  **b.** **Includes:**

      **(1)** **Warranties** or representations made at any time with respect to the fitness, quality, durability, performance, or use of **Your Work**; and

      **(2)** The providing of or failure to provide consultation or educational services, training, advice, warnings, or instructions in **Your Work**.

      **(3)** Attending and observing medical or surgical procedures or **Grand Rounds.**

Contains ISO copyrighted material, used with permission
Contains Medmarc copyrighted material

THIS ENDORSEMENT CHANGES THE COVERAGE FORM.  PLEASE READ IT CAREFULLY.

This endorsement modifies insurance provided under the following:

_____

**PRODUCTS/COMPLETED OPERATIONS LIABILITY COVERAGE FORM**

**COMMON POLICY CONDITIONS**

All Coverage Parts included in this policy are subject to the following conditions.

**A**.  **Cancellation**

**1.**  The **First Named Insured** shown in the Declarations may cancel this policy by mailing or delivering to us advance written notice of cancellation.

**2.**  We may cancel this policy by mailing or delivering to the **First Named Insured** written notice of cancellation at least:

**a.**  10 days before the effective date of cancellation if we cancel for nonpayment of premium; or

**b.**  30 days before the effective date of cancellation if we cancel for any other reason.

**3.**  We will mail or deliver our notice to the **First Named Insured's** last mailing address known to us.

**4.**  Notice of cancellation will state the effective date of cancellation. The policy period will end on that date.

**5.**  If this policy is cancelled, we will send the **First Named Insured** any premium refund due. If we cancel, the refund will be pro rata. If the **First Named Insured** cancels, the refund may be less than pro rata. The cancellation will be effective even if we have not made or offered a refund.

**6.**  If notice is mailed, proof of mailing will be sufficient proof of notice.

**B.**  **Changes**

This policy contains all the agreements between you and us concerning the insurance afforded.  The **First Named Insured** shown in the Declarations is authorized to make changes in the terms of this policy with our consent. This policy's terms can be amended or waived only by endorsement issued by us and made a part of this policy.

**C.**  **Examination Of Your Books And Records**

We may examine and audit your books and records as they relate to this policy at any time during the policy period and up to three years afterward.

**D.**  **Inspections And Surveys**

**1.**  We have the right to:

**a.**  Make inspections and surveys at any time;

**b.**  Give you reports on the conditions we find; and

**c.**  Recommend changes.

**2.**  We are not obligated to make any inspections, surveys, reports or recommendations and any such actions we do undertake relate only to insurability and the premiums to be charged. We do not make safety inspections. We do not undertake to perform the duty of any person or organization to provide for the health or safety of workers or the public. And we do not warrant that conditions:

**a.**  Are safe or healthful; or

**b.**  Comply with laws, regulations, codes or standards.

**3.**  Paragraphs **1**, and **2**. of this condition apply not only to us, but also to any rating, advisory, rate service or similar organization which makes insurance inspections, surveys, reports or recommendations.

**4.**  Paragraph **2**. of this condition does not apply to any inspections, surveys, reports or recommendations we may make relative to certification, under state or municipal statutes, ordinances or regulations, of boilers, pressure vessels or elevators.

Contains ISO copyrighted material, used with permission.                    Rev. 2016

**E.  Premiums**

The **First Named Insured** shown in the Declarations:

**1.**  Is responsible for the payment of all premiums; and

**2.**  Will be the payee for any return premiums we pay.

**F.  Transfer Of Your Rights And Duties Under This Policy**

Your rights and duties under this policy may not be transferred without our written consent except in the case of death of an individual named insured.

If you die, your rights and duties will be transferred to your legal representative but only while acting within the scope of duties as your legal representative. Until your legal representative is appointed, anyone having proper temporary custody of your property will have your rights and duties but only with respect to that property.

All other terms and conditions remain unchanged.

Contains ISO copyrighted material, used with permission.



## NOETIC SPECIALTY INSURANCE COMPANY

IN WITNESS WHEREOF, the Company has caused this policy to be executed and attested, and, if required by state law, this policy shall not be valid unless countersigned by a duly authorized representative of the Company.

## NOETIC SPECIALTY INSURANCE COMPANY
### (A STOCK INSURANCE COMPANY)

HOME OFFICE -                MONTPELIER, VERMONT
ADMINISTRATIVE OFFICE:  14280 PARK MEADOW DRIVE, SUITE 300, CHANTILLY, VA

_____              _____
         Secretary                              President

157 08 16

Page 1 of 1

THIS ENDORSEMENT CHANGES THE COVERAGE FORM.  PLEASE READ IT CAREFULLY.

This endorsement modifies insurance provided under the following:

---

**PRODUCTS/COMPLETED OPERATIONS LIABILITY COVERAGE FORM**

---

**ADDITIONAL INSURED - CONTROLLING PERSON(S) OR ORGANIZATION(S)**

**A.** The following paragraph is added to Section II – Who Is an Insured, paragraph **2.**

**Controlling Person(s) or Organization(s)**

Any person(s) or organization(s) which exercises **Financial Control** over you but only with respect to their liability arising out of their **Financial Control**.  **Financial Control** means greater than 50 percent financial ownership or enough voting stock to control management and operations by influencing or electing its board of directors.

**B.** The person(s) or organization(s) shown on the Schedule below are controlling person(s) or organization(s) for purposes of this coverage.

SCHEDULE

Name of Controlling Person(s) or Organization(s):

B. Braun Melsungen AG

All other terms and conditions remain unchanged.

157 08 16

180 08 16

Page 1 of 1

THIS ENDORSEMENT CHANGES THE COVERAGE FORM.  PLEASE READ IT CAREFULLY.

This endorsement modifies insurance provided under the following:

---

**PRODUCTS/COMPLETED OPERATIONS LIABILITY COVERAGE FORM**

---

**EXCLUSION - DESIGNATED PERSON(S) OR ORGANIZATION(S)**

This insurance does not apply to any **Claim** made by any person(s) or organization(s) designated in the Schedule below for **Damages** for, based upon or arising out of **Your Products** or **Your Work** and included within the **Products/Completed Operations Hazard**:

SCHEDULE

Name of Person(s) or Organization(s):


Aesculap, Inc., its subsidiaries, and affiliates including Aesculap Implant Systems, LLC Aesculap Biologics, LLC Aesculap suhl GmbH, Aesculap Fleximed GmbH, Aesculap Chita Sp.zo.o

Central Admixture Pharmacy Services, Inc.

All other terms and conditions remain unchanged.

180 08 16

342 08 16

Page 1 of 1

| Named Insured | Effective Date | Policy Number |
|---|---|---|
| B. Braun of America Inc. | 12/31/2018 | N18PA380025 |

THIS ENDORSEMENT CHANGES THE COVERAGE FORM.  PLEASE READ IT CAREFULLY.

This endorsement modifies insurance provided under the following:

**PRODUCTS/COMPLETED OPERATIONS LIABILITY COVERAGE FORM**

**SERVICE OF SUIT ENDORSEMENT**

It is understood and agreed that in the event of the failure of the Company to pay any amount claimed to be due hereunder, the Company, at the request of the **Named Insured,** will submit to the jurisdiction of a court of competent jurisdiction within the United States of America.  The foregoing shall not constitute a waiver of the right of the Company to remove, remand, or transfer such suit to any other court of competent jurisdiction in accordance with the applicable statutes of the state of United States pertinent hereto.  In any suit instituted against them upon this contract, the Company will abide by the final decision of such court or of any appellate court in the event of an appeal.

It is further agreed that service of process in such suit may be made upon the Superintendent, Commissioner, or Director of Insurance or any other person specified for that purpose in the statute or his successor or successors in office as their true and lawful attorney upon whom may be served any lawful process in any action, suit, or proceeding instituted by or on behalf of the Named Insured or any beneficiary hereunder arising out of this contract of insurance.

The Company hereby designates Mr. Brian S. Kern, Corporate Counsel Noetic Specialty Insurance Company, 14280 Park Meadow Drive, Suite 300, Chantilly, VA 20151, as the person to who the said Superintendent, Commissioner, or Director of Insurance is authorized to mail such process or a true copy thereof, in compliance with the applicable statutes governing said service of process in the state or jurisdiction in which a cause of action under this contract of insurance arises.

All other terms and conditions remain unchanged.

THIS ENDORSEMENT CHANGES THE COVERAGE FORM.  PLEASE READ IT CAREFULLY.

This endorsement modifies insurance provided under the following:

---

**PRODUCTS/COMPLETED OPERATIONS LIABILITY COVERAGE FORM**

---

**PRODUCT WITHDRAWAL EXPENSE ENDORSEMENT**

The following is added to Section I - Coverages

1. **Schedule**

    Limit of Insurance:  ̲  per **Product Withdrawal**

2. The following is added to Section I - Coverages.

   **D.  PRODUCT WITHDRAWAL EXPENSES**
   1. **Insuring Agreement**
      a. We will pay **Product Withdrawal Expenses**, subject to the Limit of Insurance per **Product Withdrawal**, shown above, and in excess of the **Deductible**, only if the **Product Withdrawal Expenses**
         **(1)** are:
            **(a)** paid within one year of the date of the **Product Withdrawal**;
            **(b)** reported to us within 90 days of the date the **Product Withdrawal Expenses** were paid by you; and
            **(c)** verified by documents we reasonably require to support payment of such bills timely provided to us by you including copies of any bills paid and copies of the check/draft in payment of such bills;

            and;
         **(2)** arise out of a **Product Withdrawal** that:
            **(a)** is for the removal of **Your Product** and coverage of **Your Product** is included in the **Products/Completed Operations Hazard** and not subject to any exclusion in this policy;
            **(b)** takes place in the **Coverage Territory**; and
            **(c)** commences during the policy period.

      b. A **Product Withdrawal** is deemed to commence at the earliest of the following times:
         **(1)** when a governmental body has ordered in writing that **Your Product**, or a product of which **Your Product** forms a part, be recalled; or
         **(2)** when it has been announced in any manner, to the general public, to distributors, to customers, or to Employees (not directly involved in the recall decision), that **Your Product**, or a product of which Your Product forms a part, must be withdrawn.
      c. **Product Withdrawal Expenses** incurred to withdraw **Your Products** which contain the same or substantially similar defects will be deemed to have arisen out of the same **Product Withdrawal**.
      d. A **Product Withdrawal** may be initiated by a ruling of any governmental body that a **Class 1 Product Recall** is necessary or a **Product Withdrawal** may be voluntarily initiated by you or on your behalf after a reasonable and good faith determination by you that a **Class 1 Product Recall** is necessary.

3. Section III - Limits of Insurance, paragraph **2.** is revised as follows:
   **2.** The Aggregate Limit is the most we will pay collectively for all **Damages**, **Defense Expense, Medical Expenses, Medical Monitoring Expenses** and **Product Withdrawal Expenses** under this policy.

**4.**   The following is added to Section IV - Exclusions.

    **a.**   This insurance does not apply to a **Product Withdrawal**:

        **(1)**   initiated due to a defect in **Your Product** known to exist by  you or your executive officers prior to the date  this Product Withdrawal Expense Endorsement was first issued to you or prior to the time **Your Product** leaves your control or possession; or

        **(2)**   in a country where **Your Product** or a component contained within **Your Product** was banned from the market in that country or declared hazardous by any governmental entity in that country prior to the policy period or distributed or sold by you subsequent to any governmental ban in that country; or

        **(3)**   for, based upon or arising out of any dishonest, intentionally fraudulent, criminal, malicious or knowingly wrongful act or omission committed by or at the direction of any insured, including but not limited to, any violation of the laws and regulations of any government health authority or regulatory body establishing safety standards or the violation of any anti-trust law; or

        **(4)**   made necessary due to the actual, alleged, or threatened nuclear reaction, nuclear radiation or radioactive contamination.

    **b.**   This insurance does not apply to

        **(1)**   costs or expenses of resultant litigation or proceedings, arising out of the violation of any government regulation in connection with the manufacture, sale, or distribution of any products; or

        **(2)**   any change in **Your Product**  not authorized by you  after it leaves your possession or control; or

        **(3)**   the actual, alleged or threatened discharge, dispersal, seepage, migration, release or escape of **Pollutants** at any time; or any loss, cost or expense arising out of any:

            **(a)**   request, demand or order that any insured or  others test for, monitor, clean up, remove, contain, treat, detoxify or neutralize, or in any way respond to, or assess the effects of **Pollutants**; or

            **(b)**   **Claim** or **Suit** by or on behalf of a governmental authority for **Damages** because of testing for, monitoring, cleaning up, removing, containing, treating, detoxifying or neutralizing, or in any way responding to, or assessing the effects of **Pollutants**.

**5.**   The following is added to Section V - Responsibilities and Conditions.

    **c.**   **Product Withdrawal** Reporting

        **(1)**   You must report a **Product Withdrawal** to us in writing promptly.

        **(2)**   Within 120 days after you report a **Product Withdrawal** to us, you must provide us with the following:

            **(a)**   a copy of  the written notification from a governmental organization directing you to conduct a **Product Withdrawal**; or documentation supporting your decision to voluntarily commence a **Product Withdrawal**; and

            **(b)**   a complete description of the reason for the **Product Withdrawal** and

            **(c)**   the identity of **Your Product** which is the cause of the **Product Withdrawal** and the batch or lot numbers and serial numbers.

    **d.**   **Product Withdrawal** Expense Mitigation

    You must promptly take all reasonable steps to mitigate the expenses associated with a **Product Withdrawal**.

**6.**   The following is added to Section VII - Definitions.

    **a.**   **Class 1 Product Recall** has the meaning given to it by the applicable governmental authority in the United States, or if outside the United States, the equivalent recall provision addressing situations in which there is a reasonable probability that the use of  or exposure to **Your Product** will cause serious adverse health consequences or death.

    **b.**   **Product Withdrawal** means the withdrawal of **Your Product** from the market or from use by any person or organization due to a **Class 1 Product Recall**.

    **c.**   **Product Withdrawal Expenses** means those reasonable and necessary expenses listed below paid to accomplish a **Product Withdrawal** of **Your Product** and which would not have been paid had such **Product Withdrawal** not taken place.

**(1)** expenses paid to prepare and issue broadcast, electronic, printed, telecast, and telephonic notices, announcements, and communications; and

**(2)** expenses paid to transport, ship, package, destroy, dispose, or store the withdrawn product(s); and

**(3)** costs of overtime paid to regular non-salaried **Employees** and costs incurred by such **Employees** including costs of transportation and accommodations; and

**(4)** costs of hiring independent contractors to develop and implement the **Product Withdrawal** in a manner intended to minimize your costs related to the **Product Withdrawal**.

**Product Withdrawal Expenses** do not include costs to remove **Your Product** from a person in which **Your Product** was medically implanted.

All other terms and conditions remain unchanged.

404 08 16

Page 1 of 1

THIS ENDORSEMENT CHANGES THE COVERAGE FORM.  PLEASE READ IT CAREFULLY.

This endorsement modifies insurance provided under the following:

---

**PRODUCTS/COMPLETED OPERATIONS LIABILITY COVERAGE FORM**

---

**EXCLUSION-DESIGNATED PRODUCT(S) OR WORK(S)**

This insurance does not apply to **Bodily Injury** or **Property Damage** included in the **Products/Completed Operations Hazard** and for, based upon or arising out of  **Your Product(s)** or **Your Work(s)** designated in the Schedule below.

SCHEDULE

**Your Product(s) or Your Works(s):**


Any and all, or any derivative of, the listed goods or products below:

Inferior Vena Cava (IVC) Filters

All other terms and conditions remain unchanged.

404 08 16

THIS ENDORSEMENT CHANGES THE COVERAGE FORM.  PLEASE READ IT CAREFULLY.

This endorsement modifies insurance provided under the following:

---

**PRODUCTS/COMPLETED  OPERATIONS  LIABILITY  COVERAGE  FORM**

---

**BROAD NAMED INSURED ENDORSEMENT**

The second paragraph of the policy preamble is revised to read as follows:

Throughout this policy the words "you" and "your" refer to the **First Named Insured** shown in the Declarations, and any other person or organization qualifying as a **Named Insured** under this policy and the person(s) or organization(s) shown in the schedule below, and all owned or controlled business entities existing at policy inception or formed or acquired during the policy period in which a **Named Insured** owns an interest of more than 50 percent and is responsible for procuring insurance.   The words "We," "Us," and "Our" refer to the Company providing this insurance.

**SCHEDULE**

Name of Person(s) or Organization(s):

B. Braun CeGat, LLC

B. Braun Dominican Republic, Inc.

B. Braun Interventional Systems, Inc. (formerly part of B. Braun of America, Inc.)

B. Braun Medical Inc.

B. Braun of Canada, Ltd

B. Braun of Delaware, Inc.

B. Braun of Puerto Rico Inc.

McGaw Inc.

Micor, Inc.

Osmogenix, Inc. (fka Help, Inc.)

Safe, Inc.

407 03  08

THIS ENDORSEMENT CHANGES THE COVERAGE FORM.  PLEASE READ IT CAREFULLY.

This endorsement modifies insurance provided under the following:

**PRODUCTS/COMPLETED  OPERATIONS  LIABILITY  COVERAGE  FORM**

**BROAD NAMED INSURED ENDORSEMENT**

**SCHEDULE**

**Name of Person(s) or Organization(s):**

All other terms and conditions remain unchanged.

407 08 16

THIS ENDORSEMENT CHANGES THE COVERAGE FORM.  PLEASE READ IT CAREFULLY.

This endorsement modifies insurance provided under the following:

**PRODUCTS/COMPLETED OPERATIONS LIABILITY COVERAGE FORM**

**SCHEDULE OF RETROACTIVE DATES**

With respect to the **Named Insureds** shown in the Schedule below, the **Retroactive Date** shown on the Declarations is replaced by the **Retroactive Date(s)** indicated below for each **Named Insured**:

SCHEDULE

| Named Insured | Retroactive Date | Limit of Insurance |
|---|---|---|
| B. Braun Interventional Systems, Inc. (formerly part of B. Braun of America, Inc.) | 10/01/1986 | $5,000,000.00 |
| B. Braun Medical Inc. | 10/01/1986 | $5,000,000.00 |
| B. Braun of America Inc. | 10/01/1986 | $5,000,000.00 |
| B. Braun of Delaware, Inc. | 10/01/1986 | $5,000,000.00 |
| B. Braun of Puerto Rico Inc. | 10/01/1986 | $5,000,000.00 |
| Osmogenix, Inc. (fka Help, Inc.) | 10/01/1986 | $5,000,000.00 |
| McGaw Inc. | 06/24/1997 | $5,000,000.00 |
| B. Braun Dominican Republic, Inc. | 06/04/1999 | $5,000,000.00 |

THIS ENDORSEMENT CHANGES THE COVERAGE FORM.  PLEASE READ IT CAREFULLY.

This endorsement modifies insurance provided under the following:

---

**PRODUCTS/COMPLETED OPERATIONS LIABILITY COVERAGE FORM**

---

**SCHEDULE OF RETROACTIVE DATES**

With respect to the **Named Insureds** shown in the Schedule below, the **Retroactive Date** shown on the Declarations is replaced by the **Retroactive Date(s)** indicated below for each **Named Insured**:

SCHEDULE

| Named Insured | Retroactive Date | Limit of Insurance |
|---|---|---|
| Micor, Inc. | 10/29/2009 | $5,000,000.00 |
| Safe, Inc. | 12/09/2009 | $5,000,000.00 |
| B. Braun of Canada, Ltd | 09/01/2013 | $5,000,000.00 |
| B. Braun CeGat, LLC | 06/03/2014 | $5,000,000.00 |

All other terms and conditions remain unchanged.

THIS ENDORSEMENT CHANGES THE COVERAGE FORM.  PLEASE READ IT CAREFULLY.

This endorsement modifies insurance provided under the following:

_____

**PRODUCTS/COMPLETED OPERATIONS LIABILITY COVERAGE FORM**

_____

**PERSONAL AND ADVERTISING INJURY LIABILITY COVERAGE – CLINICAL TESTING**

The following is added as Section I – Coverages, paragraph D.

**C.  BODILY INJURY, PROPERTY DAMAGE, PERSONAL AND ADVERTISING INJURY LIABILITY   COVERAGE – CLINICAL TESTING**

   **1.  Insuring Agreement**

      We will pay those sums, in excess of the **Deductible** that the **Insured** becomes legally obligated to pay as **Damages** to which this insurance applies because of:

      **(a) Bodily Injury or Property Damage** caused by an **Occurrence** committed in the course of **Clinical Testing** or

      **(b) Personal and Advertising Injury** caused by an offense:

        **1.**  committed in the course of **Clinical Testing** when conducted by you or on your behalf,  on or away from your premises; and
        **2.**  committed in the **Coverage Territory** during the policy period; and
        **3.**  for, based upon, or arising out of your business.

      This insurance applies to **Bodily Injury**, **Property Damage** and **Personal and Advertising Injury** only if the **Bodily Injury or Property Damage** or **Personal and Advertising Injury** meets the conditions set forth in Section I – Coverages, paragraph **A.1.a.(2), (3) and (4)** and paragraph **A.1.b.**.

   **2.  Definitions**

     **a.**  **Advertisement** means a notice that is broadcast or published to the general public or specific market segments about your goods, products or services for the purpose of attracting customers or supporters. For the purposes of this definition:

        **(1)**  Notices that are published include material placed on the Internet or on similar electronic means of communication; and
        **(2)**  Regarding web-sites, only that part of a website that is about your goods, products or services for the purposes of attracting customers or supporters is considered an **Advertisement**.

     However, **Advertisement** does not include:

        **(1)**  The display or design of printed material, information or images contained in, on or upon the packaging or labeling of any goods, products or services; or
        **(2)**  An interactive conversation between or among persons through a computer network.

**b.** **Personal and Advertising Injury** means injury, including consequential **Bodily Injury**, caused by one or more of the following offenses:

    **(a)**   False arrest, detention or imprisonment; or
    **(b)**   Malicious prosecution; or
    **(c)**   The wrongful eviction from, wrongful entry into, or invasion of the right of private occupancy of a room, dwelling or premises that a person occupies, committed by you or persons or organizations acting on your behalf; or
    **(d)**   Oral or written publication, in any manner, of material that slanders or libels a person or organization or disparages a person's or organization's goods, products or services; or
    **(e)**   Oral or written publication, in any manner, of material that violates a person's right of privacy; or
    **(f)**   The misappropriation of another's advertising idea in your **Advertisement**; or
    **(g)**   Infringing upon another's copyright, trade dress or slogan in your **Advertisement**; or
    **(h)**   Discrimination or humiliation that results in injury to the feelings or reputation of a natural person.

**3.**   **Exclusions**

This insurance does not apply to:

**a.**   **Bodily Injury** that arises out of the actual or threatened physical or sexual abuse, sexual molestation, or sexual exploitation of any persons committed by an **Employee** or volunteer of the **Insured**, in connection with **Clinical Testing** of which you are the sponsor; However, we will pay for any **Claim** or **Defense Expenses** for **Bodily injury** that arises out of negligent employment, investigation, supervision, reporting or failure to report to proper authorities, or retention of a person for whom an **Insured** is or was legally responsible and whose conduct resulted in actual or threatened abuse or molestation.

**b.**   **Personal and Advertising Injury:**

    **1.**   committed by an **Insured** whose business is:
        **(a)**  advertising, broadcasting, publishing or telecasting; or
        **(b)**  designing or determining content or websites for others; or
        **(c)**  an Internet search, access, content or service provider; or

    **2.**   caused by or at the direction of the **Insured** with the knowledge that the act would violate the rights of another or would result in **Personal and Advertising Injury**; or

    **3.**   for which any **Insured** is obligated to pay by reason of the assumption of liability in a **Written Agreement.** This exclusion does not apply to liability for **Damages** that the **Insured** would have in the absence of the **Written Agreement**; or

    **4.**   for, based upon or arising out of:
        **(a)**  oral or written publication of material, if done by or at the direction of the **Insured** with knowledge of its falsity; or
        **(b)**  oral or written publication of material whose first publication took place before the **Retroactive Date**; or
        **(c)**  a criminal act committed by or at the direction of the **Insured**; or
        **(d)**  a breach of contract, except an implied contract to use another's advertising idea in your **Advertisement**: or
        **(e)**  the failure of goods, products or services to conform with any statement of quality or performance made in your **Advertisement**; or
        **(f)**  the wrong description of the price of goods, products or services stated in your **Advertisement**; or
        **(g)**  an electronic chatroom or bulletin board the Insured hosts, owns, or over which the Insured exercises control; or
        **(h)**  any actual or alleged infringement of patent, copyright, trademark, trade dress, service mark, or other designation of origin or authenticity, theft of trade secret, false marking, misappropriation, or other intellectual property rights. Under this exclusion, such other intellectual property rights do

not include the misappropriation of another's advertising idea in your **Advertisement** However, this exclusion does not apply to infringement in your **Advertisement** of copyright, trade dress or slogan; or

**(i)**  the unauthorized use of another's name or product in your e-mail address, domain name or metatag, or any other similar tactics to mislead another's potential customers.

All other terms and conditions remain unchanged.

415 08 16

Page 1 of 2

THIS ENDORSEMENT CHANGES THE COVERAGE FORM.  PLEASE READ IT CAREFULLY.

This endorsement modifies insurance provided under the following:

---

**PRODUCTS/COMPLETED OPERATIONS LIABILITY COVERAGE FORM**

---

**POLICY CHANGE ENDORSEMENT**
Related Claims Coverage

| First Named Insured | Effective Date | Policy Number |
|---|---|---|
| B. Braun of America Inc. | 12/31/2018 | N18PA380025 |

The terms or conditions of your policy are changed as follows:

**RELATED CLAIMS COVERAGE**

A. Section I – Coverages, paragraph **A.1.** is amended by adding the following:

Two or more **Claims** that arise out of, are based on, relate to, or are in consequence of the same facts, circumstances, or situations that give rise to a **Triggering Event** and are made subsequent to the **Triggering Event** will be deemed to be **Related Claims**.

1. **Related Claims** will be deemed to have been made on the date the first **Claim** of such **Related Claims** is made.
2. The **Bodily Injury** or **Property Damage** that gives rise to the **Related Claims** will be deemed to have occurred on the date of the earliest **Triggering Event** that arises out of, is based on, relate to, or is in consequence of the same facts, circumstances, or situations that give rise to the **Related Claims**.

B. Section III – Limits of Insurance is amended by adding the following paragraph:

With respect to **Related Claims,** you must satisfy only a single **Deductible** amount. Likewise, our limit of liability for **Bodily Injury** and **Property Damage** arising out of **Related Claims** is limited to the per occurrence limit of liability.

C. The following terms are defined for purposes of this endorsement only:

3. **Advisory Memorandum** means a communication issued by you or a **Regulatory Authority** for the purpose of informing health professionals or other appropriate persons, firms, or us, of a risk of **Bodily Injury** or **Property Damage** caused by known or suspected hazards, defects, deficiencies, or contamination of **Your Product** or **Your Work**. A **Public Health Notification** or **Dear Doctor Letter** may, but does not necessarily, constitute an **Advisory Memorandum**.
4. **Black Box Warning** means a warning affixed to a **Drug** or **Medical Device** that the United States Food and Drug Administration requires to appear within a box or border in response to an indication that the drug or device carries a significant risk of serious adverse effects.
5. **Dear Doctor Letter** means a letter drafted by you or a **Regulatory Authority** addressed to and for the purpose of informing doctors, pharmacists, and/or health professionals of a substantial risk of harm associated with any known or suspected hazard, defect, deficiency or contamination of **Your Product** or **Your Work**

All other terms and conditions remain unchanged.

415 08 16

6.  **Product Recall** means the recall or withdrawal of **Your Product** from the market because of a substantial risk of harm associated with any known or suspected hazard, defect, deficiency or contamination of **Your Product** or **Your Work**.

7.  **Public Health Notification** means a communication issued by an insured at the request of a **Regulatory Authority** for the purpose of informing health professionals, consumers, or other appropriate persons or firms of a risk of substantial harm from **Your Product** or **Your Work**.

8.  **Regulatory Authority** means a public authority or government agency responsible for exercising authority over some area of human activity by codifying or enforcing rules and regulations, supervision, or oversight, for the benefit of the public at large.

9.  **Triggering Event** means any of the following, of which **Your Product** or **Your Work** is the subject:

    a.  the publication of an **Advisory Memorandum**;

    b.  the addition of or change to a **Black Box Warning**; or

    c.  a **Product Recall.**

All other terms and conditions remain unchanged.

All other terms and conditions remain unchanged.



416 08 16
Page 1 of 1

**IMPORTANT POLICY INFORMATION**

**Policy Number:**      **N18PA380025**
**Policy Effective**      **12/31/2018**
**Date:Notice Issued:**      **12/27/2018**

Named Insured:    B. Braun of America Inc.
Insured Address:    824 Twelfth Avenue
                Bethlehem      PA    18018         USA

## POLICYHOLDER DISCLOSURE
## NOTICE OF TERRORISM
## INSURANCE COVERAGE

You are hereby notified that under the Terrorism Risk Insurance Act, as amended, you have a right to purchase insurance cover age for losses resulting from acts of terrorism. *As defined in Section 102(1) of the Act* : The term "act of terrorism" means any act or acts that are certified by the Secretary of the Treasury —in consultation with the Secretary of Homeland Security, and the Attorney General of the United States—to be an act of terrorism; to be a violent act or an act that is dangerous to human life, pr operty, or infrastructure; to have resulted in damage within the United States, or outside the United States in the case of certain air carriers or vessels or the premises of a United States mission; and to have been committed by an individual or individua ls as part of an effort to coerce the civilian population of the United States or to influence the policy or affect the conduct of the United States Government by coercion.

YOU SHOULD KNOW THAT WHERE COVERAGE IS PROVIDED BY THIS POLICY FOR LOSSES RESULTI NG FROM CERTIFIED ACTS OF TERRORISM, SUCH LOSSES MAY BE PARTIALLY REIMBURSED BY THE UNITED STATES GOVERNMENT UNDER A FORMULA ESTABLISHED BY FEDERAL LAW. HOWEVER, YOUR POLICY MAY CONTAIN OTHER EXCLUSIONS WHICH MIGHT AFFECT YOUR COVERAGE, SUCH AS AN EXCLUSION FOR NUCLEAR EVENTS. UNDER THE FORMULA, THE UNITED STATES GOVERNMENT GENERALLY REIMBURSES 85% THROUGH 2015; 84% BEGINNING ON JANUARY 1, 2016; 83% BEGINNING ON JANUARY 1, 2017; 82% BEGINNING ON JANUARY 1, 2018; 81% BEGINNING ON JANUARY 1, 2019 AND 80% BEGINNING ON JANUARY 1, 2020, OF COVERED TERRORISM LOSSES EXCEEDING THE STATUTORILY ESTABLISHED DEDUCTIBLE PAID BY THE INSURANCE COMPANY PROVIDING THE COVERAGE. THE PREMIUM CHARGED FOR THIS COVERAGE IS PROVIDED BELOW AND DOES NOT INCLUDE ANY CHARGES FOR THE PO RTION OF LOSS THAT MAY BE COVERED BY THE FEDERAL GOVERNMENT UNDER THE ACT.

YOU SHOULD ALSO KNOW THAT THE TERRORISM RISK INSURANCE ACT, AS AMENDED, CONTAINS A $100 BILLION CAP THAT LIMITS U.S. GOVERNMENT REIMBURSEMENT AS WELL AS INSURERS' LIABILITY FOR LOSSES RESULTING FROM CERTIFIED ACTS OF TERRORISM WHEN THE AMOUNT OF SUCH LOSSES IN ANY ONE CALENDAR YEAR EXCEEDS $100 BILLION. IF THE AGGREGATE INSURED LOSSES FOR ALL INSURERS EXCEED $100 BILLION, YOUR COVERAGE MAY BE REDUCED.

**Acceptance or**
Acceptance or Rejection of Terrorism Insurance Coverage

| | |
|---|---|
| | I hereby elect to purchase terrorism coverage for a prospective premium of $ <u>Waived</u>. |
| | I hereby decline to purchase terrorism coverage for certified acts of terrorism. I understand that I will have no coverage for losses resulting from certified acts of terrorism. |

_____
Policyholder/Applicant Signature

_____
Print Name

_____
Date

416 08 16

Noetic Speciality Insurance Company
_____
Insurance Company

N18PA380025
_____
Policy Number



417 08 16
Page 1 of 1

**IMPORTANT POLICY INFORMATION**

| | |
|---|---|
| **Policy Number:** | **N18PA380025** |
| **Policy Effective Date:** | **12/31/2018** |
| **Date Notice Issued:** | **12/27/2018** |

Named Insured:   B. Braun of America Inc.

Insured Address:   824 Twelfth Avenue
                   Bethlehem        PA    18018        USA

**POLICYHOLDER DISCLOSURE
NOTICE OF TERRORISM
INSURANCE COVERAGE**

Coverage for acts of terrorism is included in your policy. You are hereby notified that under the Terrorism Risk Insurance Act, as amended in 2015, the definition of act of terrorism has changed. As defined in Section 102(1) of the Act: The term "act of terrorism" means any act or acts that are certified by the Secretary of the Treasury-in consultation with the Secretary of Homeland Security, and the Attorney General of the United States-to be an act of terrorism; to be a violent act or an act that is dangerous to human life, property, or infrastructure; to have resulted in damage within the United States, or outside the United States in the case of certain air carriers or vessels or the premises of a United States mission; and to have been committed by an individual or individuals as part of an effort to coerce the civilian population of the United States or to influence the policy or affect the conduct of the United States Government by coercion. Under your coverage, any losses resulting from certified acts of terrorism may be partially reimbursed by the United States Government under a formula established by the Terrorism Risk Insurance Act, as amended. However, your policy may contain other exclusions which might affect your coverage, such as an exclusion for nuclear events. Under the formula, the United States Government generally reimburses 85% through 2015; 84% beginning on January 1, 2016; 83% beginning on January 1, 2017; 82% beginning on January 1, 2018; 81% beginning on January 1, 2019 and 80% beginning on January 1, 2020, of covered terrorism losses exceeding the statutorily established deductible paid by the insurance company providing the coverage. The Terrorism Risk Insurance Act, as amended, contains a $100 billion cap that limits U.S. Government reimbursement as well as insurers' liability for losses resulting from certified acts of terrorism when the amount of such losses exceeds $100 billion in any one calendar year. If the aggregate insured losses for all insurers exceed $100 billion, your coverage may be reduced.

The portion of your annual premium that is attributable to coverage for acts of terrorism is _____, and does not include any charges for the portion of losses covered by the United States government under the Act.

I ACKNOWLEDGE THAT I HAVE BEEN NOTIFIED THAT UNDER THE TERRORISM RISK INSURANCE ACT, AS AMENDED, ANY LOSSES RESULTING FROM CERTIFIED ACTS OF TERRORISM UNDER MY POLICY COVERAGE MAY BE PARTIALLY REIMBURSED BY THE UNITED STATES GOVERNMENT AND MAY BE SUBJECT TO A $100 BILLION CAP THAT MAY REDUCE MY COVERAGE, AND I HAVE BEEN NOTIFIED OF THE PORTION OF MY PREMIUM ATTRIBUTABLE TO SUCH COVERAGE.


_____
Policyholder/Applicant Signature

_____
Print Name

_____
Date

_____
Insurance Company

_____
N18PA380025

Policy Number

502 02 17
Page 1 of 1

THIS ENDORSEMENT CHANGES THE COVERAGE FORM.  PLEASE READ IT CAREFULLY.

This endorsement modifies insurance provided under the following:

**PRODUCTS/COMPLETED OPERATIONS LIABILITY COVERAGE FORM**

**MEDICAL EXPENSES – CLINICAL TESTING ENDORSEMENT**

1.  **Section I.B. – Medical Expenses– Clinical Testing, paragraph 1.a.  is deleted in its entirety and replaced with:**

    a.  We will pay any **Medical Expenses, subject to the Deductible,** regardless of fault for **Bodily Injury** to any **Test/Trial Subject** who is being treated or cared for in a medical facility arising out **Clinical Testing** of **Your Product** in which you are the **Sponsor** and to which this insurance applies, provided that:

    (1)  the **Bodily Injury** did not occur before the **Retroactive Date**, if any, shown in the Declarations or after the end of the policy period, provided that, any **Bodily Injury** that commences before the **Retroactive Date** and continues after the **Retroactive Date** will be deemed to have occurred before the **Retroactive Date**; and

    (2)  the **Medical Expenses** are incurred and reported to us in writing within one year from the date that the **Bodily Injury** is known to the **Insured.**

2.  **Section III – Limits of Insurance, paragraph 5. is deleted in its entirety and replaced with:**

    5.  With the exception of the Medical Expense Coverage Limit which is subject to the **Deductible**, the Limits of Insurance for each of the coverages provided by this policy will apply excess of the **Deductible.**  The **Deductible** for each of the coverages will apply even in the event of bankruptcy or insolvency of the **Insured** or the **Insured's** estate.

All other terms and conditions remain unchanged.

502 02 17

THIS ENDORSEMENT CHANGES THE COVERAGE FORM.  PLEASE READ IT CAREFULLY.

This endorsement modifies insurance provided under the following:
_____

**PRODUCTS/COMPLETED OPERATIONS LIABILITY COVERAGE FORM**
_____

**POLICY CHANGES ENDORSEMENT**

**A.   The policy preamble found prior to Section 1 – Coverages is deleted in its entirety and replaced with:**

Various provisions in this policy restrict coverage. Read the entire policy carefully to determine rights, duties, and what is and is not covered.

Throughout this policy the words "You" and "Your" refer to the **Named Insureds**. The words "We," "Us," and "Our" refer to the Company providing this insurance.

Words and phrases that appear in boldface, other than section and paragraph headings, have a special meaning as found in Section VII – Definitions or elsewhere in this policy.

**B.   Section 1 – Coverages, paragraph A.1.b. is deleted in its entirety and replaced with:**

**b.**   A **Claim** by a person or organization seeking **Damages** will be deemed to have been first made when notice of such **Claim** is received by you or by us, whichever comes first.  Notice of a **Claim** or **Serious Adverse Event** received by your agent or **Employee** shall not constitute notice received by you unless an **Executive Officer**, corporate attorney, corporate risk manager, or individual charged with responsibility for your insurance administration received notice from said agent or **Employee**.

**C.   Section 1 –Coverages, paragraph A.1.c. is deleted in its entirety and replaced with :**

**c.**   **Bodily Injury** is deemed to occur at the earliest of:

**(1)**   **Bodily Injury** manifests such that it would be readily apparent to a reasonable person;

**(2)**   a professional medical opinion of **Bodily Injury** is rendered; or

**(3)**   **Medical Expenses** are incurred as a result of **Bodily Injury**.

**D.   Section 1 – Coverages, paragraph A.2. is deleted in its entirety and replaced with:**

**2.   Notice of a Serious Adverse Event**
If you receive notice during the policy period of a **Serious Adverse Event**, you must provide notice to us as soon as reasonably possible but not later than ninety (90) days after the end of the policy period. Any **Claim** arising out of a **Serious Adverse Event** shall be deemed to have been first made against the Insured at the time in which notice of the **Serious Adverse Event** was provided to us, unless the **Claim** arises out of **Serious Adverse Event** that occurred during the policy period but for which notice was first given to us within ninety (90) days after the end of the policy period, in which case the **Claim** arising out of that **Serious Adverse Event** will be deemed to have been made on the last day of the policy period in which the **Serious Adverse Event** occurred. The **Claim** must be reported to us as soon as reasonably possible.

**E.   The definition for Defense Expenses found in the Definitions section is deleted in its entirety and replaced with:**

**Defense Expenses** means the reasonable and necessary costs and expenses of investigation, adjustment, appraisal, defense and appeal paid or incurred by the **Insured** or by us in respect of a **Claim** or **Suit**.
**a.**   **Defense Expenses** also include:
**(1)**   All expenses we incur;
**(2)**   The premium for any bonds to release attachments, but only for bond amounts within the applicable limit of insurance. We do not have to obtain or furnish these bonds;
**(3)**   All reasonable expenses incurred by the **Insured** at our request to assist us in the investigation or defense of the **Claim** or **Suit**;

507 06 17

Page 2 of 2

**(4)** All court costs assessed against the **Insured** in the **Suit**. However, these payments do not include attorneys' fees and attorneys' expenses taxed against the **Insured**;

**(5)** Prejudgment interest awarded against the **Insured** on that part of the **Judgment** we pay. If we make an offer to pay the applicable limit of insurance, we will not pay any prejudgment interest accruing after the offer;

**(6)** All interest on the full amount of any **Judgment** that accrues after entry of the **Judgment** and before we have paid, offered to pay, or deposited in court the part of the **Judgment** that is within the applicable limit of insurance; and

**(7)** salaries or expenses of independent adjustors.

All other terms and conditions remain unchanged.

C 02 24 10 93
Page 1 of 1

THIS ENDORSEMENT CHANGES THE COVERAGE FORM.  PLEASE READ IT CAREFULLY.

This endorsement modifies insurance provided under the following:

---

**PRODUCTS/COMPLETED OPERATIONS LIABILITY COVERAGE FORM**

---

**EARLIER NOTICE OF CANCELLATION PROVIDED BY US**

(If no entry appears below, information required to complete this Schedule will be shown in the Declarations as applicable to this endorsement.)

For any statutorily permitted reason other than nonpayment of premium, the number of days required for notice of cancellation, as provided in paragraph 2 of either the Cancellation Common Policy Condition or as amended by an applicable state cancellation endorsement, is increased to the number of days shown in the Schedule below.

SCHEDULE

Number of Days' Notice:  90

All other terms and conditions remain unchanged.

THIS ENDORSEMENT CHANGES THE COVERAGE FORM.  PLEASE READ IT CAREFULLY.

This endorsement modifies insurance provided under the following:

---

**PRODUCTS/COMPLETED OPERATIONS LIABILITY COVERAGE FORM**

---

**PENNSYLVANIA CHANGES – CANCELLATION AND NONRENEWAL**

**A.** The Cancellation Common Policy Condition is replaced by the following:

**CANCELLATION**

1. The **First Named Insured** shown in the Declarations may cancel this policy by writing or giving notice of cancellation.

2. **Cancellation Of Policies In Effect For Less Than 60 Days**

   We may cancel this policy by mailing or delivering to the **First Named Insured** written notice of cancellation at least 30 days before the effective date of cancellation.

3. **Cancellation Of Policies In Effect For 60 Days Or More**

   If this policy has been in effect for 60 days or more or if this policy is a renewal of a policy we issued, we may cancel this policy only for one or more of the following reasons:

   **a.** You have made a material misrepresentation which affects the insurability of the risk. Notice of cancellation will be mailed or delivered at least 15 days before the effective date of cancellation.

   **b.** You have failed to pay a premium when due, whether the premium is payable directly to us or our agents or indirectly under a premium finance plan or extension of credit. Notice of cancellation will be mailed at least 15 days before the effective date of cancellation.

   **c.** A condition, factor or loss experience material to insurability has changed substantially or a substantial condition, factor or loss experience material to insurability has become known during the policy period. Notice of cancellation will be mailed or delivered at least 60 days before the effective date of cancellation.

   **d.** Loss of reinsurance or a substantial decrease in reinsurance has occurred, which loss or decrease, at the time of cancellation, shall be certified to the Insurance Commissioner as directly affecting in-force policies. Notice of cancellation will be mailed or delivered at least 60 days before the effective date of cancellation.

   **e.** Material failure to comply with policy terms, conditions or contractual duties. Notice of cancellation will be mailed or delivered at least 60 days before the effective date of cancellation.

   **f.** Other reasons that the Insurance Commissioner may approve. Notice of cancellation will be mailed or delivered at least 60 days before the effective date of cancellation.

   This policy may also be cancelled from inception upon discovery that the policy was obtained through fraudulent statements, omissions or concealment of facts material to the acceptance of the risk or to the hazard assumed by us.

4. We will mail or deliver our notice to the **First Named Insured's** last mailing address known to us. Notice of cancellation will state the specific reasons for cancellation.

5. Notice of cancellation will state the effective date of cancellation. The policy period will end on that date.

6. If this policy is cancelled, we will send the **First Named Insured** any premium refund due. If we cancel, the refund will be pro rata and will be returned within 10 business days after the effective date of cancellation. If the **First Named Insured** cancels, the refund may be less than pro rata and will be returned within 30 days after the effective date of cancellation. The cancellation will be effective even if we have not made or offered a refund.

7. If notice is mailed, it will be by registered or first class mail. Proof of mailing will be sufficient proof of notice.

**B.** The following are added and supersede any provisions to the contrary:

1. **Nonrenewal**

   If we decide not to renew this policy, we will mail or deliver written notice of nonrenewal, stating the specific reasons for nonrenewal, to the **First Named Insured** at least 60 days before the expiration date of the policy.

          Contains ISO copyrighted material, used with permission.          Rev. 2016

**2. Increase Of Premium**

If we increase your renewal premium, we will mail or deliver to the **First Named Insured** written notice of our intent to increase the premium at least 30 days before the effective date of the premium increase.

Any notice of nonrenewal or renewal premium increase will be mailed or delivered to the **First Named Insured's** last known address. If notice is mailed, it will be by registered or first class mail. Proof of mailing will be sufficient proof of notice.

All other terms and conditions remain unchanged.

415 01 08
Page 1 of 1

THIS ENDORSEMENT CHANGES THE COVERAGE FORM.  PLEASE READ IT CAREFULLY.

This endorsement modifies insurance provided under the following:

_____

**PRODUCTS/COMPLETED OPERATIONS LIABILITY COVERAGE FORM**

**ADDITIONAL INSURED – FOREIGN COMPANIES**

| First Named Insured B. Braun of America Inc. | Effective Date 12/31/2018 | Policy Number N18PA380025 |
|---|---|---|

The terms or conditions of your policy are changed as follows:

**COMMERCIAL LIABILITY UMBRLLA COVERAGE FORM**

**SCHEDULE**

**Name and address of person(s) or organization(s) as insureds:**

| Insured | Country | Insured | Country |
|---|---|---|---|
| Aesculap AG | Germany | B. Braun Hospicare Ltd | Ireland |
| Almo Erzeugnisse E. Busch GmbH | Germany | B. Braun Medical AG | Switzerland |
| B. Braun Surgical GmbH | Germany | B. Braun Medical Ltd | United Kingdom |
| Bibliomed | Germany | B. Braun Aesculap de Mexico S.A. | Mexico |
| B. Braun Vet Care GmbH | Germany | B. Braun Medical Industries Sdn. Bhd | Malaysia |
| Aesculap Suhl GmbH | Germany | B. Braun Korea Co. Ltd. | Korea |
| B. Braun Avitum AG | Germany | B. Braun Aesculp Japan Co Ltd | Japan |
| Aesculap Fleximed GmbH | Germany | Labratorios B. Braun SA | Brazil |
| B. Braun Medical (F) S.A.A | France | INVITEC HmbH & Co. KG | Germany |
| B. Braun Surgical SA | Spain | TETEC AG | Germany |
| B. Braun Avitum Italy S.p.A | Italy | B. Braun Australia Pty. Ltd | Austrailia |
| Aescup Chita Sp. zo.o | Poland | Sterinova, Inc. | Canada |

and B. Braun Melsugen AG and all subsidiaries having direct sales to the United Sates.

(If no entry appears above, information required to complete this endorsement will be shown in the Declarations as applicable to this endorsement.)

**Section II – Who Is An Insured** is amended by adding the following:
The person(s) or organization(s) shown in the Schedule above are insured(s) under this policy but only with respect to products or goods sold distributed by you within the United States of America (including its territories and possessions), Puerto Rico, and Canada.  All other terms and conditions remain the same.

All other terms and conditions remain unchanged.